AMERICAN SULPHITE PULP CO. v. DE GRASSE PAPER CO.

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

No. 45.

1. EVIDENCE—JUDICIAL NOTICE—PATENTS—PRIOR ART.

Where neither the pleadings nor proof in a suit for infringement of a patent bring into the record the prior art, the court cannot take judicial notice of it on the question of the validity of the patent, except as to matters of general knowledge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 23.]

2. SAME—INVENTION—BURDEN OF PROOF.

Whether a patent for a cement lining for wood pulp digesters in which the sulphite process is used, which are large closed receptacles of iron subjected during the process to great heat and very high temperature and to the actions of sulphurous gases to protect the metal shell from injury from such gases and acids, is void for lack of invention, because of the admitted use of such linings in the open vessels to protect them from the action of acids is not so obvious that the court can so determine without proof, and the burden of proof rests upon one asserting its invalidity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 35, 36.]

3. SAME—INFRINGEMENT.

The Russell reissue patent, No. 11,282 (original No. 445,235), for a wood pulp digester having a cement lining of the metal shell, held, on the record, to disclose invention, and its claims to be entitled to a 'liberal construction to' cover any homogeneous structural linings composed of adhesive acid resisting materials in the nature of cement; also held infringed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

On appeal from a decree of the Circuit Court dismissing the bill based upon reissued letters patent No. 11,282. The opinion below is reported in 151 Fed. 47. The patent was held invalid by the Circuit Court of the District of Maine in an action by this complainant against Howland Falls Pulp Co., 70 Fed. 986. On appeal to the Circuit Court of Appeals for the First Circuit, the decree of the Circuit Court was reversed and the patent held valid and infringed. 80 Fed. 395, 25 C. C. A. 500. The patent was again before the Circuit Court for the District of New Hampshire; the decision being reported in 103 Fed. 975. The patent was indirectly considered by this court in Panzl v. Battle Island Co., 138 Fed. 48, 70 C. C. A. 474.

Alex. P. Browne, Frank T. Benner, and Howard P. Denison, for appellant.

Henry Schreiter, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The patent in suit has been the subject of such protracted controversy that every argument which can be urged for or against its validity will be found admirably stated in the opinions already delivered, and need not be repeated here.

Indeed, in the view which we take of the record, none of the defenses challenging the validity of the patent considered in the Maine Case, are now open to discussion except such as arise on the face of

the patent itself. The bill is in the usual form, it alleges the grant of the patent and infringement by the defendant. It alleges the litigation in the First Circuit, sets out in totidem verbis, the answers of the defendants in the Maine and New Hampshire suits and makes profert of the opinions and decrees sustaining the validity of the patent. The answer admits the granting of the original patent, denies that Russell was the inventor of the improvements described therein, alleges that the defendant has no knowledge of the granting of the reissue and denies the validity thereof. Further answering the defendant avers that it is uninformed as to the prior litigations, denies infringement and alleges that the linings in the digesters used by it were placed there with the consent of the complainant. The answer alleges further that prior to the lining of the digesters in suit the complainant for a valuable consideration granted to the then owners of the digesters the right to line the same with the patented lining but that they are not so lined; on the contrary, the lining used is similar to that in use by Friend & Stebbins, in Ohio, and many other parties, more than two years prior to the application for the Russell patent. In the prior litigation 94 anticipatory patents, 40 prior publications, and 57 alleged instances of prior use were set up. Not one of these is alleged as a defense in the answer in the case at bar. Even the prior knowledge and patent which induced Judge Putnam, in the Circuit Court, to invalidate the patent, are omitted from the answer. It would seem that the omission to allege any affirmative defense can be accounted for only upon the theory that, after the fierce attack upon the patent made in the courts of the First Circuit, the pleader was of the opinion that the decision establishing its validity would be regarded as stare decisis, unless some additional proof were adduced.

Indeed, that is practically admitted by the appellee, whose brief contains the following:

"The case before the court here was conducted, up to the closing of the proofs, upon the theory that appellee's predecessors obtained from the appellant, as compensation for the damages suffered from the failure of the Russell patented cement lining installed by appellant in their digesters No. 1 and No. 2, a license, under the patent in suit, to use, in the digesters in issue here, the Russell patented cement lining, or any other lining they might choose. Consequently no exhibits of prior art were introduced in evidence."

At the hearing the complainant offered the reissue patent and proof of infringement and rested. The defendant offered proof in the endeavor to establish the defense of noninfringement by showing:

First. That the linings of the digesters in controversy were licensed by complainant to the defendant's predecessor, and

Second. The seemingly inconsistent proposition, that the digesters do not contain the patented lining.

It will thus be seen that we have nothing before us but the statements of the patent itself and the patents to Mitscherlich and Reynolds referred to in the specification. With these exceptions there is no prior art. We are permitted to consider the decrees in the First Circuit as rules of decision entitled to the highest respect but we are not permitted to consider the facts as stated in the opinions either to

sustain or defeat the patent, for the reason that these facts are not in proof here.

We have nothing more before us than if the case were here on demurrer to the bill. The rules prescribing the limits beyond which the court is not permitted to go at such hearings is clearly stated by the Supreme Court in N. Y. Belting Co. v. N. J. Rubber Co., 137 U. S. 445, 11 Sup. Ct. 193, 34 L. Ed. 741. Mr. Justice Bradley says:

"Whether or not the design is new is a question of fact, which whatever our impressions may be, we do not think it proper to determine by taking judicial notice of the various designs which may have come under our observation. It is a question which may and should be raised by answer and settled by proper proofs."

The problem which the patentee sought to solve was to provide a suitable lining for a digester used in the sulphite wood pulp process. These digesters are large, closed receptacles, often 15 feet in diameter and 30 feet in length, in which the contents are subjected to very high steam pressure, sometimes as high as one hundred pounds to the square inch. The outer shell of the digester is of iron and the sulphurous gases generated by the process, together with the bisulphite liquor and the high pressure and temperature, attack and soon destroy the outer shell unless protected by a lining.

Russell provided a cement lining, and he says:

"I believe it to be unknown until demonstrated by me that a cement lining would stop the passage of the acid solution to the digester shell, notwithstanding the high pressure and temperature."

He says also:

"I am aware that cement linings have been employed in various open vessels for heating acid solutions; but in such open vessels the temperature never exceeds 212°."

It is argued that there can be no invention in transferring the lining of an open vessel to a closed vessel. It will be observed that the specification does not say that wood pulp had ever been treated with the bisulphite solution in an open vessel. Indeed, it would seem that such treatment would be impossible as the process described in the patent is essentially one which must be carried on in a closed vessel under great heat and pressure.

The question of invention in such circumstances is one of fact, involving difficult questions relating to the law of physics and dynamics which cannot be said to be of such clear and general acceptation that the court will take judicial knowledge of them.

Facts which may thus be considered without proof are such as are referred to by the Supreme Court in Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200, namely, "things which must happen according to the laws of nature," the existence of the ice-cream freezer, etc. The court is, however, careful to add:

"This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject shall be resolved promptly in the negative."

In Brown and Piper the claim was:

"Preserving fish and other articles in a close chamber by means of a freezing mixture, having no contact with the atmosphere of the preserving chamber."

The test applied by the court is stated as follows:

"If the cream were taken out of the freezer and fish put in, there would be, in all substantial respects, the same apparatus, process and result."

It will be seen at a glance how abortive such a test would be in the case at bar. If the acid solution were taken out of the cement lined open vessels of the prior art and the contents of a pulp digester put in, the result would be nothing.

What would be the effect of placing a lining used in an open boiler in a closed receptacle, subjected to the influences of sulphurous gases and great heat and pressure, is a question which we think cannot be solved without proof. It is enough that we are and must be agnostics regarding it. We do not know what the effect would be except as we are told by the patent.

It seems to be thought that it was incumbent upon the complainant to establish by extrinsic testimony that it involved invention to take a lining from an open vessel where it was subjected only to boiling heat and comparatively slight pressure and subject it to steam heat, tremendous pressure and the action of various gases engendered by the process; but we do not so understand the law.

The grant of a patent is presumptive evidence that the patentee is entitled to the monopoly fairly covered by his claims. He who asserts to the contrary must prove his assertions.

It is only when the court by bringing to its aid matters of common knowledge, is convinced, that the patent is void on its face, that such proof can be dispensed with. This, in our judgment, is not such a case, and if we were in doubt, the fact that a court of co-ordinate jurisdiction, after the most exhaustive and careful examination, had decided that the patent involved a high order of invention, would resolve the doubt in favor of the complainant.

The question of infringement remains to be considered. The claims are as follows:

"1. The improved pulp-digester herein described, having an outer shell, A, and a continuous lining or coat, B, of cement as described applied to the interior of the said shell, for the purpose set forth.

"2. The improved pulp-digester herein described, having an outer shell, A, a continuous lining or coat, B, of cement substantially as described, applied to the interior of the said shell, and an interior of lining of tiles, C, all substantially as set forth."

The Circuit Court of Appeals of the First Circuit says that these claims "should be construed as including all cementitious mixtures which ordinary skilled, practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art without invention. In our opinion the patent is valid, and protection should be commensurate with the invention stated in the claims and the discovery and process described in the specification; and in our view the patent covers homogeneous structural linings, composed of adhesive acid

resisting materials in the nature of cement, which possess the required qualities described in the specification." The judge of the Circuit Court, being convinced that the patent was void for lack of patentability, naturally placed a restricted construction upon the claims but, believing as we do that the invalidity of the patent has not been proved, we see no reason to differ with the Circuit Court of Appeals in the broad construction quoted supra.

The two digesters in controversy have continuous linings or coats of cement placed in position as follows: A wall of bricks was laid around the digester, leaving a space of about four inches between it and the iron shell. When five or six courses were so laid, liquid cement was poured into this space and a second course of bricks, set edgewise and breaking joints, was laid by forcing the bricks down in the liquid cement. When the space was thus filled with cement and brick to the level of the inside brick wall, this wall was raised by adding a second five or six course addition, and a second space was formed between it and the iron shell which was filled as before. This process was repeated until the top of the digester was reached. We have found it impossible to arrive with perfect accuracy at the total thickness of the lining considered in its entirety and of the width of the spaces filled with cement on either side of the interior wall of brick, for the reason that the witnesses do not agree regarding the same. The differences between the witnesses are slight, and, we think, unimportant in view of the fact that it is agreed on all hands that there is a continuous lining or coat of cement applied to the interior of the metal shell and that this lining is at least $3\frac{1}{2}$ inches in thickness. The fact that the interior of this lining is occupied by bricks set edgewise to reinforce the structure or cheapen its cost, we regard as immaterial. The defendant certainly has the patented lining; what else it has is not important. Of course, the addition of the inner brick wall does not avoid infringement. Indeed, this wall may be regarded as the equivalent of the interior lining of tiles of the second claim.

Assuming that the defendant, having alleged and attempted to establish the invalidity of the patent, is in a position to claim a license under it, we find no evidence which convinces us that, as to the digesters in controversy, such a license was given.

The decree is reversed, with costs, and the cause is remanded to the Circuit Court, with instructions to enter a decree for the complainant.