AMERICAN SULPHITE PULP CO. v. ST. REGIS PAPER CO.

(District Court, N. D. New York.  October 8, 1914.)

Nos. 7187, 7188, 7185, 7184, and 7180.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PULP DIGESTER.

The Russell reissue patent, No. 11,282 (original No. 445,235), for a pulp-digester, having a continuous lining or coat of acid-resisting cementitious material applied in a plastic condition to the interior of the outer shell, is valid, and is infringed by a structure in which the described continuous lining of cement is used, whether applied directly to the outer shell or separated therefrom by a lead lining, or by a course of brick, or by both.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Separate suits by the American Sulphite Pulp Company against the St. Regis Paper Company, against the Union Bag & Paper Company, against the Newton Falls Paper Company, against the Malone Paper Company, and against the Carthage Sulphite Pulp Company. On final hearing. Decrees for complainant.

Suits in equity for an accounting and to recover damages for alleged infringement of United States letters patent No. 11,282, dated November 15, 1892, and granted to George F. Russell, assignor to the American Sulphite Pulp Company, complainant.

Frank T. Benner and Alex. P. Browne, both of Boston, Mass., for complainant.

Samuel R. Betts, of New York City, for defendants.

RAY, District Judge. The original patent, No. 445,235, was granted to George F. Russell January 27, 1891, on application filed October 18, 1890. The patent is stated to be for "improvements in pulp-digesters" and the claims read as follows:

"1. The improved pulp-digester herein described, having an outer shell, A, a continuous lining or coat, B, of cement, as described, applied to the interior of said shell, for the purpose set forth.

"2. The improved pulp-digester herein described, having an outer shell, A, a continuous lining or coat, B, of cement, substantially as described, applied to the interior of the said shell, and an interior lining of tiles, C, all substantially as set forth."

Claim 2 differs from claim 1, in that it adds the "interior lining of tiles." Both claims call for the following elements: (1) "Outer shell, A," which is described as "ordinarily constructed of metal, such as iron, steel, or brass, which is liable to be injuriously affected by the acid solution employed." It is *upon* the interior of *this shell* of the digester that Russell forms "a *continuous lining*, or coat, B, of acid-resisting material, applied in a plastic condition," which is the second element of both claims. The second claim has an added element, viz., an "interior lining of tiles." The patent says:

"Again, it has been customary to supplement the brick or tile linings heretofore in use with a lining of sheet lead interposed between the brick or tile lining and the digester shell. This feature may be entirely dispensed with when my improvement is adopted. I mean to be understood that the digester linings comprising a layer or coat of masonry or brick work laid in cement, to which I have just referred, have always been, so far as I know, supplemented by a lining of sheet lead interposed between the brick or tile lining and the digester shell."

The only possible invention in Russell or improvement over the prior art is the use of the "continuous lining or coat, B, of acid-resisting material applied in a plastic condition." The patent says:

"This lining or coat is of the nature of cement and may be composed of any material or mixture of materials which is acid-resisting and capable of being made plastic and adhesive to the shell of the digester and so compact as to prevent the acid solution from reaching the iron shell in consequence of the high steam pressure required in practice."

The prior art taught the use of a plastic acid-resisting lining for open vessels, but not used in cooking sulphite pulp; the iron or steel shell; a

lining of lead next the shell, which lining is acid-resisting; and also a supplemental lining next the lead, made of a layer of masonry or brick work laid in cement. It was said by the Circuit Court of Appeals, in effect, that it constituted invention to use a *continuous* lining or coat of acid-resisting cementitious material in a closed vessel when the contents are subjected to great pressure, even if such material under the pressure of the heat in an open vessel had proved effectual to prevent the acid contained in the cooking pulp from reaching the metal vessel. American Sulphite Pulp Co. v. De Grasse Paper Co., 157 Fed. 660, 662, 87 C. C. A. 260.

By this decision of the Circuit Court of Appeals this court is, of course, bound. It seems clear from the record that the one question here is whether or not the defendants use the cementitious lining of the patent in suit? In his brief defendants' counsel describes the structures used by these defendants as follows:

"There is no dispute as to defendants' structure, which is described in testimony of complainant's witness Connor (C. R., pp. 11–16). It is shown in the colored drawing submitted herewith, entitled 'Defendant's Structure Non-Antem Lining (All Five Cases).' The usual metal digester shell is lined next to its inside surface with a substantial lining of lead $3/16$ of an inch thick. This is a massive lining, one square foot of which weighs 12 pounds (see Defendant's Exhibit No. 12, Non-Antem Digester Lead Lining, a piece of the lead lining shown the court on argument, and filed). All witnesses admit that such a lead lining while remaining intact is a perfect protection to the shell against the acid, and complainant's expert witness Carmichael admits that in a digester of dimensions 15 feet by 42 feet the weight of such a lead lining $3/16$ of an inch thick would be about 26,000 pounds (C. R., p. 37). See, also, stipulation (C. R., p. 37) as to cost of lead and putting in, making it over $1,900 for a digester of that size, and that the lead in the digester of St. Regis Paper Company, defendant, 14x38 feet, weighed 19,606 pounds; the cost for lead and putting in being over $1,400. Emphasis is laid on this item of structure and this testimony, as showing that the lead lining is massive and expensive, a perfect protection while intact, covering the entire shell, and conforming to the Meurer patent, under which defendants are licensed and working.

"Next inside the lead lining above described was one inch of cement grout. The next layer was of vitrified brick laid edgewise, the brick being 2½ inches thick. The next internal layer was another inch of cement grout, and the next layer, called the 'pulp course,' coming next to the pulp, was of digester or vitrified brick 2½ inches thick. Note particularly that the first interior course of brick was laid up in cement gradually, and the grout was merely poured in between the brick and the lead lining of the shell, not compacted or pressed in in any way; also that the same method was followed in connection with the pulp course of brick, viz., the brick laid up gradually in cement, and the inch of grout between the two courses of brick poured in loose and not compacted. Particular attention is called to this as differing from the defendant's method of digester lining construction in the De Grasse Case, where a layer of brick 4 inches in thickness was built up inside the digester shell about 4 inches distant from the shell itself, and into that 4 inches of space was poured grout with brick inserted therein and pressed into the grout as a filler, for the purpose of lessening the amount of cement used."

In the Mitscherlich patent, No. 284,319, we had the outer shell of metal, a thin continuous sheet or lining of lead (acid proof), and then a lining of brick work laid in cement. Russell omits the lead lining and has not only brick-work lining, but a course of cement between the brick work and the shell. These defendants have (1) the metal shell;

(2) a lead lining; (3) a continuous lining of cement grout one inch thick; (4) a layer of vitrified brick laid edgewise in cement; (5) another continuous lining of cement one inch thick, and, lastly, coming next the pulp, a layer of brick laid in cement, $2\frac{1}{2}$ inches thick. It is conceded on all hands that the cement between the bricks used in laying the brick will separate from the brick more or less, allowing the acid to pass through, and that frequent pointing is necessary. The brick used are acid proof. When we consider that the patentable feature of Russell is the continuous lining or course of acid-proof cement (and he made it a substitute, if desired, for the lead lining), I cannot see that infringement is defeated by using the lead lining and any number of courses of brick laid in cement, so long as defendants use these two continuous courses of acid-proof cement, and it is conceded that they are used.

In American Sulphite Pulp Co. v. De Grasse Paper Co., 151 Fed. 47, this court held that the Russell patent, in view of the prior art, did not disclose patentable invention in using the lining of acid-proof cement under the great pressure to which it is subjected in a pulp-digester, inasmuch as its acid-resisting power under a pressure of 212 degrees in an open vessel was well known; that the transfer of such a lining from an open to a closed vessel, where subjected to a much greater pressure, did not constitute invention; that it involved a mere experiment, which would have occurred to any one skilled in the art. This view, as stated, was overruled by the Circuit Court of Appeals.

The defendants claim that their digesters are made under the patent to Eugene Meurer, No. 514,374, dated February 6, 1894, applied for December 30, 1892. The patent in suit is dated November 15, 1892, on application (for reissue) filed June 24, 1892. The Meurer patent calls for, in combination with the outer shell of a pulp-digester, or similar vessel, of a lead lining fitted as a continuous sheet against the inner face of the shell and an inner lining of acid-proof blocks *fitted against* the lead lining. The specification says:

"The present invention seeks to provide the digester with a lead lining which shall be free from the difficulty mentioned; and to this end I propose to mold sheets of lead against the inner face of the shell of the digester and fuse the edges of these sheets together, so as to form one continuous sheet in intimate contact with the shell, and without the use of cement or of rivets for attaching such lining to the shell. This leaves the lead lining comparatively unaffected by the motions of contraction and expansion imparted to the metal shell by changes of temperature. An interior lining of acid-proof brick built up against the lead lining will operate to protect this latter lining from collapse whenever the digester is blown out."

The Meurer claim reads:

"The combination with the outer shell of a pulp-digester or similar vessel of a lead lining fitted as a continuous sheet against the inner face of the shell and an inner lining of acid-proof blocks fitted against the lead lining."

It will be noted that this patent makes no mention of a continuous lining or course of cement (of any thickness) between the lead lining and the "inner lining of acid-proof blocks fitted against the lead lining," unless it be included in or covered by the words "fitted against" the lead lining. But an inch of cement grout, be it of the consistency

of buttermilk, or much thicker, when poured in between the brick course and the lead lining, will soon harden into a stone-like formation. The grout will, of course, adhere to the lead and to the cement with which the bricks are laid and to the bricks themselves, and in this way only is the grout used to fit the bricks against the lead. When this Meurer patent was applied for the Russell patent had been issued 1½ months and the application for the reissue had been pending 6 months.

Assuming, as we must, in view of the decision of the Circuit Court of Appeals, that Russell was patentable because of his continuous course of cement lining, Meurer, in view of the prior art, would have been rejected, had he included in his claim the continuous lining of grout, cement, or allowed, perhaps, as an improvement, inasmuch as he combined with the shell (old), the lead lining (old), the brick lining (old), the cement lining, which was old, also, when he (Meurer) applied. Meurer has his lead lining fitted as a continuous sheet by fusing the edges of the several sheets of lead together. Mitscherlich covered the interior surface of the shell with a thin layer of sheet lead, which, says the patent,

"is applied at ordinary temperature to the iron walls by a cement composed of common tar and pitch. This cement is heated and the layer of lead placed thereon by rubbing it smoothly and carefully down."

It is useless to speculate on what the Patent Office would have done in the event stated. The defendants admit:

"All these cases are defended by the Non-Antem Sulphite Digester Company, a New York corporation, and all the structures proceeded against are practically identical, and the digester linings therein have been put in by said Non-Antem Sulphite Digester Company under license under letters patent to Eugene Meurer, No. 514,374, dated February 6, 1894 (Defendant's Exhibit No. 4, printed D. R., pp. 65, 66). The single claim of this Meurer patent reads as follows: 'The combination with the outer shell of a pulp digester or similar vessel of a lead lining fitted as a continuous sheet against the inner face of the shell and an inner lining of acid-proof blocks fitted against the lead lining.' It is an improvement on lead-lined digesters which have sheet lead linings, and also on those of the Mitscherlich lead-lined construction. It is *not* an improvement on the Russell patent lining, which contains no lead."

The defendants do use the continuous lining of cement, two of them divided by a lining of brick laid in mortar. The Circuit Court of Appeals has said that this cement lining was new, disclosed patentable invention, and that Russell was the first inventor and has a valid patent therefor. Omit these two continuous courses of cement one inch in thickness, and defendants would not infringe. In using them, or either of them, defendants do infringe. I see no escape from this conclusion. I have gone over all the decisions and all of the prior art presented. In the Pierredon French patent of 1833, No. 154,589, in a digester we have the metal shell with a lining of square blocks of stone or brick—

"set *into* a mortar of Portland cement which fills the joints up to about half their height; the rest of the joint is filled afterwards by melted lead in such a manner that there is in contact with the acid liquor only acid-resisting materials."

It did not occur to Pierredon to use a continuous Portland cement lining. It does appear that it was well known in 1883 that Portland cement was acid proof, and it seems strange that no one prior to Russell used a double lining of acid-proof brick with another of Portland cement interposed, or a continuous lining of cement alone, or a lining of cement supplemented by a layer of brick next the cement; but, so far as appears, it was not done, and it seems from the decision of the Circuit Court of Appeals in the De Grasse Case, supra, that the Russell patent is not limited to a continuous Portland cement lining placed next to the metal shell; that is, the words of the claims, "applied to the interior of the said shell," are not a limitation on the claims such as to permit the use by others of the Russell cement lining when not "applied *to* the shell," but placed on its interior and separated therefrom by a wall of brick laid in cement. In the Dè Grasse Paper Company Case the Circuit Court of Appeals quoted and *approved* the holding in the First Circuit that these claims should be construed as including all cementitious mixtures which ordinary skilled practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art *without invention*. In our opinion the patent is valid, and protection should be commensurate with the invention stated in the claims and the discovery and process described in the specification; and in our view the patent covers homogeneous structural linings composed of adhesive acid-resisting materials in the nature of cement which possesses the required qualities described in the specification.

In the De Grasse Paper Co. Case the Circuit Court of Appeals (157 Fed. 664, 87 C. C. A. 260) describes the structure of the defendant in that case held to infringe. True, there the course of brick was a few inches from the shell, and the grout was poured into the space between the shell and the wall of brick. But can it be material that the continuous lining of cement is removed from the interior wall of the shell by the interposed wall or lining of brick, when we consider that the shell is protected from the action of the acid in the cooking pulp just as effectually and just as surely, whether the continuous cementitious lining be placed next the shell or removed therefrom by an interposed course of brick laid in cement mortar? It is the continuous cement lining which prevents the acid from reaching the shell, and I do not see that a change in its location by interposing a course of brick, or a course of lead, or both, avoids infringement. The continuous lining or coat of cement in the broad sense is "applied to" the interior of the shell. I think a person's overcoat is applied to his body, even if his other clothing is interposed. It is immaterial that the Meurer structure is patented, so long as it includes as one of the elements of its lining the Russell invention or lining which was prior to Meurer. Meurer had no right to use it if it is a patentable and a patented invention, even in combination. The defendants urge that their structures have a lead lining, as well as the cement lining. But how is this important? If they use the prior art structure and add thereto the Russell lining, they infringe. If they use some other structure, and

add or include the Russell lining they infringe. And it matters not how meritorious the structure of the Meurer patent. His structure made in accordance with his patent infringes, if it includes the Russell cementitious continuous lining. In the De Grasse Paper Company Case the Circuit Court of Appeals said:

"The fact that the interior of this lining [referring to the defendant's lining in that case] is occupied by bricks set edgewise to reinforce the structure or cheapen its cost we regard as immaterial. The defendant certainly has the patented lining; what else it has is not important."

It is urged that the first claim of the Russell patent—that is, the lining made according to the first claim—is destitute of utility. If a continuous cement lining is acid proof, it will protect the metal shell of the digester so long as it remains unbroken; that is, free from cracks. There can be little doubt that the friction of cooking pulp will and does wear this cement lining when used without the brick support. It must be that there is more or less vibration to the digester when in use, and that this, with the intense heat and pressure when in use, coupled with the fact that the expansion and contraction of the shell and that of the lining are not of the same degree, are not uniform, may cause, and do cause, at times, cracks in the cement lining. The evidence shows that a lead lining of itself will not remain in place; that on account of heat, vibration, nonuniformity of expansion, etc., it will spring or bend away from the steel shell, buckle more or less, and crack. The lead linings require support, and so it may be of the cement linings. If these supporting walls are made acid proof, so much the better.

These suits were commenced but a short time prior to the expiration of the Russell patent, which shortly thereafter expired. No injunctive relief can be granted, but this fact does not warrant a dismissal. No motion has been made to transfer the causes to the law side, and they were brought to a final hearing. I find nothing in the records that will justify this court in holding the Russell patent invalid, or in holding that it must be so narrowly construed as to make the use of a continuous cement lining, supplemented by brick walls or supports laid in cement, one of which walls is next the shell, a noninfringing structure.

The complainant is entitled to a decree for an accounting in each case with one-fifth costs in each.