LUTEN v. SHARP et al.

(Circuit Court of Appeals, Eighth Circuit. July 8, 1916.)

No. 4378.

1. APPEAL AND ERROR ⬤1011(1)—REVIEW—FINDINGS OF FACT.
  Where the chancellor has considered and determined an issue of fact on conflicting testimony, the presumption is that his conclusion was correct, and an appellate court will not reverse it, unless the evidence clearly proves that he has made a serious mistake in his finding upon the question of fact, or has fallen into a controlling error of law.
  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ⬤1011(1).]

2. PATENTS ⬤240—INFRINGEMENT—IMPROVEMENT PATENTS.
  One who makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or colorable evasions thereof.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. ⬤240.]

3. PATENTS ⬤328—INFRINGEMENT—REINFORCED CONCRETE BRIDGES.
  The Luten patents, No. 830,483, claim 18, No. 853,183, claims 20 and 21, No. 853,203, claims 6, 8, 9, 10, and 11, No. 853,204, claim 18, and No. 989,272, claims 3 and 4, all for improvements in the construction of reinforced concrete bridges construed, and held not infringed.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by Daniel B. Luten against Walter Sharp and Harry I. Jones. Decree for defendants, and complainant appeals. Affirmed. For opinion below, see 217 Fed. 76.

Russell T. MacFall, of Indianapolis, Ind. (Arthur M. Hood, of Indianapolis, Ind., and Stanley, Vermilion, Evans & Carey, of Wichita, Kan., on the brief), for appellant.

S. A. Smith, of Winfield, Kan., J. T. Lafferty, of Kansas City, Mo., and W. P. Hackney of Winfield, Kan., for appellees.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANBORN, Circuit Judge. Daniel B. Luten appeals to this court from a decree which dismissed his complaint against Walter Sharp and Harry I. Jones for their alleged infringement of his letters patent for certain improvements in the reinforcement of cement girders, upright members, parapets, and floors of bridges over streams by placing therein, in the ways specified in his patents, steel rods, wire mesh, expanded metal, etc., to strengthen the various members of the structures. The validity of his patents was not decided, but the court below dismissed his suit on the ground that the defendants had not infringed them.

[1, 2] The use of steel and iron rods, wire mesh, expanded metal, and like articles embedded in different ways in cement girders, beams floors, posts, and other articles made of cement, to strengthen and reinforce them, was old, well known, and had long been practiced before the patented inventions of Luten here in question were discovered, and the question for review is one of fact. It is the question whether or not any of the plaintiff's patented monopolies have been infringed by the defendants. In this court, therefore, the case is governed by these rules: First, where the chancellor has considered and determined an issue of fact on conflicting testimony, the presumption is that his conclusion was correct, and an appellate court will not reverse it unless the evidence clearly proves that he has made a serious mistake in his finding upon the question of fact, or has fallen into a controlling error of law; and, second, one who makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or colorable evasions thereof.

[3] The alleged infringements of the defendants consist in the construction of a single bridge of two spans, one 40 feet and the other 20 feet in length, of cement girders or beams placed 4 feet apart upon piers, and extending from one pier to another, reinforced with steel rods embedded in the girders about 2 to 4 inches above the lower surface thereof, and extending on a level from end to end of each girder. These girders were about 2½ feet high; those on the sides of the bridge were higher, and extended a foot or 2 above the floor of the bridge and formed parapets. The floor was made of cement in which hog wire—that is to say, such mesh wire as is commonly used to fence hogs—was embedded throughout the length and breadth of the floor near its upper surface and up into the parapets. The claims which plaintiff insists are infringed by this structure must be treated separately, and they are the following:

Claim 18 of patent No. 830,483, issued to Daniel B. Luten September 4, 1906, is:

"A girder, beam or arch with reinforcing members following closely a portion of the unloaded surface, and then crossing to the loaded surface, and other roughened members following one surface closely."

The device of this patent was the combination of a primary system of reinforcing girders by the use of smooth steel rods extending length-

wise through them near the lower or unloaded surface and curving and extending upward towards the loaded surface at their ends, and a secondary system consisting of "some efficient non-slipping section, such as wire mesh, twisted, corrugated, or other irregular rods, expanded metal," etc., placed adjacent to the smooth rods of the primary system throughout the region of greatest tension; that is to say, throughout the space about midway between the piers. It is this secondary system that is referred to in the claim as "other roughened members following one surface closely." Because the defendant did not use this secondary system, which is an essential element of the device claimed, and because he did not curve and extend upward the ends of his smooth tension rods, he did not infringe this eighteenth claim.

Claims 20 and 21 of patent No. 853,183 to Mr. Luten, issued May 7, 1907, are:

"20. A bridge of concrete or similar material with ribs projecting above and below, and with tension members having shearing members attached thereto embedded in the lower ribs.

"21. A bridge of concrete or the like with ribs projecting both above and below and with a roadway between the upper ribs and having reinforcing members in the lower ribs."

The specifications and drawings of this patent disclose an arch with a rib beneath the tensional region at the crown of the arch, but no rib above the crown, and with ribs on the exterior of the arch for a short distance along the tensional regions about half-way from the crown to the abutments of the arch with reinforcing rods suitably anchored in the exterior ribs crossing the ring of the arch in the region of the non-bending movement and hooked around or otherwise attached to the interior rib under the crown of the arch. After describing this arrangement of ribs and reinforcement the patentee closed his specification with these words:

"I claim broadly, therefore, the arrangement of reinforcing rods and ribs along the regions of tension with the rods crossing the rib and joining at the regions between. I claim the arrangement of rods and ribs on alternately opposite sides of an arch rib, the rods crossing the rib and joining the alternate rods between the regions of tension."

And he then made 35 claims, the twentieth and twenty-first of which, quoted above, he insists are infringed. But the bridge which the defendant constructed had no such exterior or interior ribs to its alleged arches, no reinforcing rods anchored in the exterior ribs, crossing the rib of the arch in the non-tension regions and hooked or secured to the interior rib under the crown, nor any of the other specific novel devices portrayed in the specification and drawings and secured by the twentieth and twenty-first claims. And if these claims are not strictly limited to such devices, if they are broadly construed, so as to cover the alleged arches of the defendant, they become utterly void, for there could be no novelty at the time these devices were discovered in placing the ends of cement girders on piers, extending the outside girders a few inches or feet above the

floor of the bridge to make parapets, reinforcing the girders with steel rods embedded therein near their unloaded surfaces and extending throughout their length, and there was no error in the finding of the court below that claims 20 and 21 of this patent were not infringed.

Counsel for Mr. Luten argue that claims 6, 8, 9, 10, and 11 of patent No. 853,203, issued to him May 7, 1907, are infringed by the bridge of the defendants. Claim 8 is for—

"a concrete bridge consisting of a floor with walls at each side and reinforcing members embedded transversely of the floor and extending upward into the walls."

Claims 6, 9, 10, and 11 are similar, but less descriptive of the defendants' structure, and unless claim 8 is infringed none of these claims is. If claim 8 should be construed literally and broadly without reference to the state of the art, or to the specification and drawings of the patent, or to the characer and purpose of the specific device it describes, this claim might be held to cover the defendants' structure for hog wire is embedded in their floor near its upper surface throughout its length and breadth, and it extends upward into the parapet. When, however, the specification is read and the drawings are examined, the discovery is made that the hog wire was not embedded in the floor for the purpose and it does not perform the function of the reinforcing members of the patent "embedded transversely of the floor and extending upward into the walls." The patentee writes in his specification that he has found that tension rods sometimes break through the underlying portions of the ribs of arches when strains are applied normally to them at and adjacent to their crowns, thus weakening the ribs and putting them in danger of breaking through longitudinally.

"My present invention," he continues, "is designed to provide a means whereby the beneficial effect of the tension rods may be preserved without subjecting the arch to the danger above referred to; and in its preferred form this means consists of one or more wires or straps embedded in the material of the arch at or near the crown, running in the direction of the axis of the arch, that is, transversely to the span and to the main tension members, and woven back and forth crosswise of the material and beneath the tension members to bond the material securely in transverse direction, these bonding members, where the arch is provided with spandrel walls, being preferably extended upwardly into side walls to thereby bond the walls to the arch rib and prevent their cracking or breaking away from the latter. * * * I have found in practice that where these rods are extended continuously for a considerable distance through the tensional region at the intrados on either side of the crown, while locally effective for their intended purpose, they nevertheless tend to break the layer of concrete beneath them at and adjacent to the crown away from the remainder of the arch body, and thus permit the latter to crack at the crown and fail. I have found that this tendency may be effectually guarded against by embedding in the material of the arch one or more straps 10 which are woven back and forth between the inner and outer sides, passing beneath the tension rods 7 in the manner clearly shown in Fig. 2."

Thus it appears that the evil Luten's transverse wires woven between and beneath the tension rods were designed to remedy was the

breaking through the cement on the lower side of the crown of the arch of the tension rods. He devised the use of these transverse wires beneath the crown of the arch and immediately adjacent thereto because there only was there danger that the tension rods when subjected to strains would break through the lower side of the arch, and there only, in his conception, would the transverse wires be useful to remedy the evil he perceived. He placed these transverse wires beneath the tension rods, because there only could they perform the function of his invention. There only could they bond and hold the tension rods up in the body of the cement, so that they would not break through the lower layer of the cement under the crown of the arch. The tension rods in defendants' bridge lie level in the lower part of his girders 2 or 4 inches above their lower sides. The girders are about 2½ feet in height, and the cement floor rests upon them. The hog wire which the defendants use is embedded in the floor near its upper surface and far above these tension rods. It cannot, therefore, and does not, remedy the evil at which Luten's transverse wires were leveled. It does not pass beneath the tension rods, as do his transverse wires, and it cannot and does not perform the function of those wires. It cannot and does not hold the tension rods up in the cement and in that way prevent them from breaking through the lower side of the arch or the girders. In view of the fact that the use of wire mesh of various kinds and forms to reinforce cement constructions was well known when Luten made the invention disclosed in this patent, and of the facts that the hog wire in the floor of the defendants' bridge was not placed there for the purpose and does not have the effect of remedying the evil at which Luten's transverse wires were aimed, that it does not lie beneath but lies above these tension rods, that it does not hold them up and prevent them from breaking through the lower side of the girders near the crown of an arch, or elsewhere, and therefore does not perform the function of Luten's transverse wires, its use by the defendants in their bridge does not infringe claims 6, 8, 9, 10, or 11 of his patent No. 853,203.

Claim 18 of patent No. 853,204, issued to Mr. Luten May 7, 1907, which reads, "In a bridge, an earth-covered concrete floor supported by reinforced concrete girders," was not infringed by the defendants because they did not cover the floor of the bridge which they constructed with earth. That was done after they completed it by the county for which they built it.

Finally, counsel for the patentee insist that claims 3 and 4 of patent No. 989,272, issued to Mr. Luten December 9, 1908, are infringed by the defendants' bridge. These claims are:

"3. The combination of an upright member with a transverse member and knee brace, all of hardened plastic with embedded tension members reinforcing the upright member and transverse member continuously adjacent the surfaces opposite the knee brace and extending away from said opposite surface of the transverse member intermediate its middle and the knee brace and other tension members embedded longitudinally through the knee brace.

"4. The combination of a transverse member continuous over an upright member with knee braces, all of hardened plastic, reinforced continuously

along the surfaces of the upright member and along the surfaces of the transverse member opposite the knee braces, said reinforcement having extensions away from said opposite surface between the knee brace and the middles of the spans of the continuous transverse member."

The scheme of reinforcement here claimed is unique, complicated, and unintelligible without the specification and drawings of the patent. This scheme and every column, brace, and tension member described in the specification or shown in the drawings, has been followed out and carefully compared with the piers, girders, parapets, floor, tension, and other members embodied in the defendants' bridge. The result is that, while there are tension members in various parts of that bridge, the evidence in this case utterly fails to prove that the defendants' bridge embodies the scheme of reinforcement or the specific tension members described in the specification and drawings and claimed in claims 3 and 4 of this patent No. 989,272, or any tension members which, by the same or a similar scheme and means, accomplish the end sought or secured by the scheme and the members described in these claims. Hence the conclusion is that these claims are not infringed by the defendants' bridge.

All the claims urged by the complainant have now been considered, none of them was proved to have been infringed by the bridge constructed by the defendants, and the decree below is affirmed.