LUTEN v. WILSON REINFORCED CONCRETE CO. et al.

(District Court, D. Nebraska, Lincoln Division. July 24, 1917.)

No. 19.

1. PATENTS ☞328—INFRINGEMENT—REINFORCED CONCRETE CONSTRUCTION.
   The Luten patent, No. 999,663, for a tension member with an anchor tip for use in concrete construction, *held* not infringed.
2. PATENTS ☞328—INVENTION—REINFORCED CONCRETE BRIDGES.
   The Luten patents, No. 818,386, No. 853,202, and No. 853,203, all relating to methods of using reinforcing members in concrete arch bridges, *held* void for lack of invention, in view of the prior art.

In Equity. Suit by Daniel B. Luten against the Wilson Reinforced Concrete Company, in which the State of Nebraska intervenes. Bill dismissed.

Russell T. MacFall, of Indianapolis, Ind., and Frank H. Drury, of Chicago, Ill., for plaintiff.

W. F. Moran, of Nebraska City, Neb., for defendant.

Willis E. Reed, Atty. Gen., Dexter Barrett, Deputy Atty. Gen., and Wallace R. Lane, of Chicago, Ill., for intervener.

MUNGER, District Judge. Suit by Daniel B. Luten, alleging infringement of letters patent issued to him. Of these no evidence was submitted relating to patents numbered 852,970, 852,971, 853,183, and 933,771. The patents relied upon are numbered 818,386, 853,202, 853,203, 999,663, but complainant has abandoned all claims, and has asked to dismiss his bill of complaint, which leave will be granted, as to all other claims except as to claims 1 and 7 of patent numbered 818,386, claim 16 of patent numbered 853,202, claims 9, 12, 14, 16, and 18 of patent numbered 853,203, and claim 6 of patent numbered 999,663.

In a general way these patents relate to methods of using reinforcing members in connection with concrete, especially in the construction of arches of bridges.

[1] The claim in patent No. 999,663 is for the use in combination with hardened plastic material, of a tension member with an anchor tip of a spiral of increasing curvature tangential to the tension member and imbedded in the plastic material. Complainant charged that a bridge built by some of the defendants infringed upon this patent. The plans called for the use of a hook at the end of the metallic tension members, but the evidence shows that these plans were not followed, and that the tension members had no curvature at or near the

ends, and reliance was placed upon friction as a bond. As there was no infringement of the patent, no further discussion of it is necessary.

[2] The claim in patent 853,202 reads as follows:

"16. A concrete bridge having a concrete spandrel extended back of the abutments with upright rods or bars imbedded near the ends of the spandrel."

The evidence shows that this form of structure was anticipated by a number of patents and publications, especially by the Von Emperger patent of June 1, 1897, and by the Monier construction.

The claims in controversy in patent 853,203 relate chiefly to the placing of reinforcing and tension members in the arch or floor of the bridge transverse to the axis in connection with other members imbedded in the spandrels. The Monier method of construction completely anticipates any claims of complainant's patent that the defendants' bridge can be said to follow. The defendants' expert is clear upon this point, and the figure and drawings of the Monier patent and the graphic delineation of its use published in the Engineering News of 1893 leave no doubt. The use of a reading glass as a magnifier makes certain the form of construction used in that published article. Other patents, publications, and uses of similar construction show a state of the art such that Luten has no claim to invention for any of these claims that the defendants' bridge has followed.

The remaining patent, No. 818,386, involves two claims. Claim 1 reads as follows:

"An arch having imbedded therein a plurality of tension members passing alternately across the rib, said members being low at the crown and high at the haunches, and each of said members passing across the rib at different longitudinal points from the others, substantially as described."

Claim 7 is as follows:

"An arch having imbedded therein rods, bars or other tension members in two or more series, following one face of the arch rib, thence across and following the other face of the rib, the points of crossing for the different series being angularly or laterally displaced with respect to each other, substantially as described."

These claims attempt to cover the positioning of members where stresses will occasion fractures. The principles that govern the location of the danger points from live loads were old when Luten entered this field. Writers and inventors had indicated the methods of correcting these dangers by the use of tension members substantially as Luten's patent attempts to apply the correction.

In view of the state of the art, Luten cannot be said to have supplied more than ordinary mechanical or engineering skill in giving functions to tension members when applied to the problem of arches upon which is to be imposed a live load.

For these reasons, a decree may be prepared, dismissing complainant's bill.