LUTEN v. WHITTIER et al.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1918.)

No. 3071.

1. PATENTS ⬥328—VALIDITY—REINFORCED CONCRETE BRIDGE.

Luten patent, No. 853,203, for a reinforced concrete bridge having spandrel walls, in view of the prior art and analogous arts, *held* void for lack of invention.

2. PATENTS ⬥27(1)—INVENTION.

Discovery of a previously unknown law of operation, involved in a known method, is not invention.

3. PATENTS ⬥328—INVENTION—REINFORCING BAR FOR CONCRETE.

Luten patent, No. 1,070,903, for a reinforcing bar for concrete, having projections of such height and spacing that the space between adjacent projections is more than 10 times the height of the projections, *held* void for lack of invention.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by Daniel B. Luten against William F. Whittier and others. Decree for defendants, and complainant appeals. Affirmed.

Daugherty, Todd & Rarey, of Columbus, Ohio (G. B. Schley, A. M. Hood, and Russell T. MacFall, all of Indianapolis, Ind., of counsel), for appellant.

Edw. N. Pagelsen and Louis M. Spencer, both of Detroit, Mich., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Suit upon United States patents No. 853,203 (May 7, 1907), and No. 1,070,903 (August 19, 1913), both to Daniel B. Luten. The District Court found both patents invalid for lack of both invention and novelty, and dismissed the bill. This appeal is from that decree of dismissal.

[1] 1. The invention of patent No. 853,203 relates to a method of metal reinforcement of "arches, culverts, and similar bridge structures which are commonly constructed from concrete, stone, brick, mortar, and other similar materials"—being specially applicable to reinforced concrete arch bridges which are provided with spandrel walls to prevent the earth fill from overflowing the ends of the arches; that is to say, the sides of the bridge.

The stated general object of the invention is to "combine increased strength and efficiency with superior economy of materials and labor,

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as compared with structures of" their class in general use. The preferred method of accomplishing this object is illustrated by Figs 1 and 2 of the patent drawings here reproduced:

Fig. 1.          Fig. 2.

Fig. 1 being a cross-sectional view through the rib of the arch longitudinally with the span, and Fig. 2 a central sectional view through the arch body and its spandrel walls transversely of the span—*5* representing the rib of the arch, *6* the spandrel walls, *7* a series of tension rods imbedded in the arch rib, extending transversely of the axis of the arch, bonded at *8* by their own extensions into the material of the arch, and passing downward into the abutment; *10* straps likewise imbedded in the arch material, woven between the inner and outer sides, carried up into the material of the spandrel walls and anchored around tension rods *11* imbedded in those walls. There is thus embraced a reinforcement of the arch, both in the direction of the axis and transversely of the material of its rib, as well as a tying of the arch to the spandrel wall and a reinforcement of that wall.

The arrangement disclosed is claimed by the patentee to so bond the spandrel walls to the arch as to prevent the overturning of those walls or their breaking away under pressure of the filling or loading, and to so reinforce the arch as to resist the tendency of the tension rods to split the arch rib longitudinally through its underlying portion, and to prevent failure of the arch by the longitudinal splitting away of the portion carrying the spandrel walls. The claims in issue, being Nos. 3, 7, 10, 15, and 21, are printed in the margin.[1]

[1] 3. An arch having a spandrel wall and straps imbedded in the rib of the arch and extended into said wall to bond the wall to the body of the arch, substantially as described.

7. A bridge of concrete or similar material, with reinforcing members transverse to the roadway and extending upward into a wall or spandrel near its back face.

10. A bridge of concrete or similar material with reinforcing members imbedded transverse to the roadway and extending upward into a wall or spandrel.

15. A concrete arch and spandrel wall with a longitudinal member and a transverse member imbedded in the spandrel and overlapping, and a member imbedded in the arch in the general direction of its axis.

21. An arched structure of concrete or similar material with walls transverse to the axis of the arch and bonded to the arch by reinforcing members imbedded in the arch in a direction transverse to the walls.

Masonry bridges of arch construction antedate the Christian era; spandrel walls thereon, for the purpose of resisting transverse pressure from filling or loading, have been used from time immemorial. At the date of Luten's claimed invention (which his testimony carries back to 1901) the art of reinforcing concrete, by metal, while not as advanced as now, was by no means in its infancy. Not only was its use for general building purposes then old, but it had been applied to the construction of arch bridges with spandrel walls, including the reinforcing of both arch and wall and the bonding of the two together.

We come at once to the question whether, in view of the prior art, the reinforcing and bonding means of the claims in suit involve invention. Brannon, by British patent No. 2,703, disclosed in 1871 (30 years before Luten) a bridge consisting of concreted material filling incasements of wirework, and forced into a dense and tenacious mass resting upon a series of masonry arches, as indicated by the subjoined patent drawing (reduced), which shows longitudinal reinforcing rods G in the

FIG. 11.

side walls, vertical reinforcing rods I extending from the side walls into the arch, and transverse rods A extending from the side walls into the concrete and metal floor resting upon the arches. The combination of the metal and concrete was intended, not only to increase coherence and solidity of the mass, but to resist "traverse and tensile strains." The side walls, while not designed to resist earth pressure, were spandrel walls. A parapet may be a spandrel wall, for any wall built on the extrados of the arch and filling in the spandrel is a spandrel wall. The manner of applying the concrete is, of course, immaterial (Munising Co. v. American Co., 228 Fed. 700, 708, 143 C. C. A. 222); but as the metal structure was self-supporting, and the transverse rein-

forcement entered, not the arches themselves, but the floor, which rests upon a series of arches, the Brannon device is not a complete anticipation of the Luten claims in suit, although several of those claims read literally upon it.

In 1873, Monier, by a fourth addition to his French patent of 1867, disclosed a bridge in which the abutments, the arch, and the spandrel wall were formed of iron bars, constituting a grillage "plastered with cement or hydraulic lime," as shown by (reduced) Fig. 1 of the patent drawings here reproduced, the left half of which shows the reinforcement, and the right half the bridge as completed.

Fig. 1.

Fig. 3.

In this figure the rods $W$ run longitudinally through the spandrel wall, while rods $Z$ extend vertically in the spandrel and into the arch. In other figures (not here reproduced) rods $Y$ run through the arch in the general direction of the axis of the arch; the rods $W$, $Z$, and $Y$ are tied together at their points of crossing. The claims in suit, other than 7 and 10, read literally upon the Monier disclosure, although there, as in Brannon, the metal structure is self-supporting.

From about the year 1890 there was a rapid advance in the art of metal reinforced concrete for building purposes generally. Reference to some of the patents relating to this general subject (although not directly to bridge structures) is found in the opinion of this court in Trussed Concrete Steel Co. v. Goldberg, 222 Fed. 506, 138 C. C. A. 106. The Engineering News contained in 1893 a description of a Monier bridge arch of concrete reinforced with a network of steel. If the vertical rods shown in the illustration (and made by upturning the horizontal transverse rods) are intended to fasten the spandrel wall to the arch proper, the structure would seem to cover in terms the claims here in suit, except claim 7. The description, however, is silent on that subject, and the question must be determined by the drawing alone. The District Court was of opinion that the drawing showed such intended fastening. While we cannot say that it does not so show, the disclosure is not so clear as to convince us on that point, and we therefore disregard the disclosure, except for such bearing as it has on the art generally.

In 1897, however, Hinckley, by United States patent No. 623,904, showed a metal-concrete arch bridge containing longitudinal reinforce-

ment in the arch rib, and forms of bonding connection between the spandrel wall and the arch rib, one in the form of a rod or anchor bar, another in the form of a frame, either fastened to one of the beams of the arch or simply built into its concrete—each form being imbedded in the concrete both of the arch and of the spandrel wall. This disclosure lacked the longitudinal reinforcement of the spandrel walls, found, however, elsewhere in the prior art. We think the method of connection between wall and arch not subject to the criticism of ineffectiveness.

There are, moreover, two disclosures in another art which we think pertinent to the subject of invention. These are the British patent to Hennebique (1900), No. 8,814, and the United States patent to Bone, No. 705,732, applied for in 1899, and issued in 1902—both on retaining walls. The Bone patent was considered by us in Akron v. Bone, 221 Fed. 944, 137 C. C. A. 514. Both these patents disclose (especially that of Hennebique) longitudinal reinforcing rods extending through both the upright retaining wall and the base, horizontal rods in the base continued upwardly in the retaining wall and anchoring the base and wall together, as shown by Fig. 4 of the Hennebique patent below.

*Fig. 4*

Both Hennebique and Bone show reinforcement at the back side of the retaining wall (as called for in claim 7 of the patent in suit); Bone expressly stating, as his reason for using it, that the tension is there greatest and that the metal will there have the greatest effect. Hennebique also shows, as applied to a retaining wall and its base, essentially the reinforcement called for by claim 10. While disclosures in nonanalogous arts are not of great value on the question of anticipation (Star Brass Works v. General Elec. Co. [C. C. A. 6] 111 Fed. 398, 49 C. C. A. 409), that is not the question we are considering. Moreover, the retaining wall is directly analogous to the spandrel wall, considering the latter as designed to resist the pressure of earth filling and loading; so considered the problem is the same in each case. Luten recognized this problem in the statement in his patent that the reinforcing arrangement described prevents "failure of the arch * * * by the tendency of the spandrel wall itself to overturn due to the pressure of earth filling or other materials or loading back of it," and that it bonds the material of the arch rib "against the tendency of the spandrel wall to break away under the earth pressure," etc.

We think the Hennebique system of reinforcement and bonding applied to Hinckley's metal-concrete arch bridge (substituting the retaining wall of the one for the spandrel wall of the other and the base of the retaining wall for the arch) would directly anticipate Luten.

Hinckley recognized the analogy between the bridge spandrel wall and an ordinary retaining wall by saying in his specification that it "is customary for spandrel walls $A$ (like the retaining walls) to be so constructed that their weight suffices to counteract the outward thrust or pressure of the impounded earth, which in practice fills the space between them. By putting part of this thrust upon a metal bar or frame imbedded in the concrete a saving can be effected in the cost of the spandrel wall."

Plaintiff asserts, however, that until 1901 a spandrel wall was universally regarded as a load on the arch; that in that year he discovered that a spandrel wall served to stiffen the arch, and so to strengthen it, instead of being an extra load upon it; that his system of reinforcement is devised in view of that discovery, and is adapted to the condition so discovered; that such system accomplishes results not otherwise attained, those most prominently asserted being that the arch is suspended from or carried by the spandrel wall as a beam, that the longitudinal reinforcement of the wall prevents distortion or buckling of the arch, that the wall is held from slipping on the arch ring by the straps connecting the wall and the arch rib, that the reinforcing rods prevent cracking off of the end section of the arch rib, that the vertical rods in the spandrel wall prevent its cracking along a horizontal line above the springing lines of the arch, that the longitudinal and transverse rods in the spandrel wall prevent failure in short sections due to earth pressure, and that the rods extending from the wall into the arch ring and transverse to the roadway tend to prevent shearing a section of the arch ring from the remainder; that by reason of these discoveries it was possible to make spandrel walls thinner and lighter than formerly.

That a spandrel wall such as involved here strengthens the arch appreciably seems obvious to the most casual view, and can hardly be said to be the subject of discovery. Indeed, the patent in suit is silent respecting the function of the spandrel wall as helping to sustain the arch. It is a fundamental principle of the arch that a downward pressure at a given point causes it to rise and thus be distorted or buckled elsewhere. The inner line of the spandrel wall is itself arch-shaped, conforming to the extrados of the arch. At its ends it rests upon an abutment or foundation of some kind, as illustrated by a portion of a cut of one of plaintiff's bridges.

The pressure of the wall, especially at a distance from the crown of the arch, by the mere fact of its weight, tends not only to resist thrust at the springing lines of the arch; but the tendency of the arch to distort or buckle outwardly when under thrust is resisted. In masonry, where the arch has been most commonly used, it has always been the general practice to bond the spandrel wall to the arch by mortar; and in concrete work such bond has regularly been effected through the concrete itself. If plaintiff's arch is suspended from his spandrel wall, so was Hinckley's, although perhaps plaintiff's method is more effective, in that his straps are carried higher up into the wall. This, however, is matter of degree only.

[2] If plaintiff discovered that a new and useful result was effected by the use of his means, he is entitled to a patent on those means, provided he has disclosed and specified them. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279. But a discovery of a previously unknown law of operation involved in a known method is not invention (General Elec. Co. v. Cooper-Hewitt Co., 249 Fed. 69, —— C. C. A. ——, recently decided by this court); and we think that is the utmost plaintiff can claim. We are not impressed that the asserted lightness of plaintiff's spandrel walls is so far due to the features of the claims in suit as to indicate the presence of invention.

Years before plaintiff applied for the patent in suit the theory of steel reinforcement of concrete, in that the latter resists compression strains strongly and tension strains only lightly, while steel has strong tensile resistance and so reinforces the concrete by supplying the element which the latter lacks, was well known; and standard practice had for years called for the metal reinforcement of concrete where weakest, and where subject to the severest tensile strain. So far as we can see, plaintiff has merely applied this well-known principle in well-known ways, and has thereby accomplished no new result in a patentable sense. The question is not whether the preferred means disclosed differ in detail from prior construction, but whether plaintiff's claims, read in the light of the specification, call for means open to invention in view of the prior art. Taking into account the entire prior art, and recognizing that invention is but a question of fact, we think plaintiff's advance was only that properly attributable to the skill of the mechanical engineer familiar with bridge construction, and that the claims in suit lack invention. The instant case is obviously distinguished from Detroit Iron & Steel Co. v. Carey, 236 Fed. 924, 150 C. C. A. 186.

Plaintiff is evidently an intelligent and skillful bridge engineer, designer, and builder. His work has doubtless contributed greatly to the reinforced concrete bridge-building art, and he is entitled to great credit therefor. His success in that art is perhaps due in part to the invention in suit, but it seems to us not improbably due in larger part to his personal efficiency, and perhaps to other claims of the patent in suit not here involved, as well possibly to numerous other patents which he has taken out. In our opinion the District Court rightly held the claims in suit lacking in invention.

[3] Patent No. 1,070,903 is for a transversely corrugated bar for

reinforcing concrete. Its basic idea is that the intervening spaces between the corrugations should be more than ten times their height, for the reason that the crushing strength of concrete is approximately ten times its shearing strength, and that, unless the length of the section of concrete lying between the projections is more than ten times the height of such section the rod, when subject to tension by longitudinal pulling, will entirely shear off this intervening concrete section, allowing the rod to pull out; while if the length of the concrete section is more than ten times its height there will be merely a crushing of so much of the area of the concrete as bears against the corrugations, the start toward failure being immediately arrested by the increased density of the concrete, caused by its compression. Economy of material, due to the wide spacing of the corrugations, is also an object.

The first claim alone is in issue. It reads:

"1. A reinforcing bar for concrete, provided with projections of such height and spacing that the space between adjacent projections is more than ten times the height of the projections."

We think this claim clearly lacking in invention. Reinforcing metallic bars imbedded in concrete, and provided with projections and deformations of various kinds to aid in preventing a slipping of the bar in the concrete, were old long before Luten applied for his patent. Plaintiff admits that he did not discover that the compressive strength of concrete was ten times as great as its shearing strength; indeed, he admits that it is not even definitely known at the present time what the precise ratio is. At the time of plaintiff's application, however, it was the general (though not the universal) understanding of engineers that such was approximately the ratio, although that opinion is apparently not now so generally held as then. It was apparently never regarded as absolutely fixed and invariable. Plaintiff concedes that at "as early a date as 1901 [which was ten years before plaintiff's application] the point was that the bar should be so proportioned that it could not fail in shear but must fail in compression." The testimony in this case, as to the effectiveness of plaintiff's bar in producing this result is in more or less conflict, but we need not consider that question.

It is not claimed that there would be invention in discovering that the space between the projections should have the same relation to the height as the ratio of compression strength to shearing strength. Plaintiff admits that that is "simply what one does in proportioning rivets in structural steel; that is to say, proportioning a rivet so that it will neither shear off nor compress, so that all the parts of the structure shall be equally strong." The contention is, however, that the patent covers "all bars having projections in which the spaces between the projections are more than ten times the height of the projections," regardless of how much or how little the ratio may be above 10 to 1.

The record does not show that reinforced rods in which the ratio between distances apart and height was greater than 10 to 1 were not used before plaintiff's application; on the other hand, there are several disclosures in the prior art, by way of patent drawings of bars, the height of whose projections is less than one-tenth of the space be-

tween them. Thus, in the Hyatt British patent of 1877 (No. 289) the drawings indicate a ratio of from 11½ to 1 to 13 to 1, according to different witnesses—plaintiff giving the first-named ratio. In the Thacher United States patent of 1899 (No. 617,615) the relation shown is conceded by plaintiff to be about 20 to 1. In the Fietz-Leuthold Swiss patent of 1895 (No. 10,703) the ratio appears to be from 11 to 1, as admitted by plaintiff, to 12 to 1, according to another witness. True, these ratios are predicated upon measurements of drawings not affirmatively appearing to be made to scale; and in the absence of teachings on this subject in the specifications, such disclosures are usually and properly regarded as merely accidental. Munising Co. v. American Co., supra, and cases there cited. But in view of what has been said of prior engineering acceptance generally of a ratio of about 10 to 1 between compressing and shearing strength of concrete, the engineering knowledge of the function of the reinforcing rod and its relation to such concrete strength, of the number of patent disclosures cited, the fact that the object of the deformation was to prevent slipping, and plaintiff's recognition that the ratios named are indicated by the face of the drawings, there is less reason to think that such showing is merely accidental, notwithstanding the drawings of Hyatt's United States patent of 1878 (No. 206,112) indicate a ratio of about 8 to 1. But, however this may be, an assertion, upon this record, of invention in the alleged discovery that a ratio of something more than 10 to 1 (without determining how much more) was desirable, on the theory that plaintiff alone saw the advantage of halting failure by increasing initial compression, is, to our minds, too shadowy for recognition.

The judgment of the District Court must be affirmed.