LUTEN v. SCOTT et al.

(District Court, W. D. Oklahoma. August 15, 1918.)

No. 832.

PATENTS ⬥328—FOR CONCRETE BRIDGES INVALID.

The Luten patents No. 853,202 and No. 853,203 relating to reinforced concrete bridges held void for lack of invention over structures of the prior art; the former patent also held not infringed if conceded validity.

In Equity. Suit by Daniel B. Luten against Chasteen F. Scott and the Illinois Concrete Machinery Company. Decree for defendants.

Arthur M. Hood, George B. Schley, and Russell T. MacFall, all of Indianapolis, Ind., for plaintiff.

Bennett & Pope, of Oklahoma City, Okl., for defendants.

John B. Harrison, of Oklahoma City, Okl., for the State.

COTTERAL, District Judge. The suit was brought for infringement of five patents, granted for improvements in bridge and arch structures. By a special plea, defendant Scott sought a dismissal as to him, on account of having acted only as an officer and director of the Illinois Concrete Machinery Company in the construction of the alleged infringing bridge, and hence was without personal liability. After a hearing, the plea was denied. If the plaintiff has a cause of action, that ruling should be adhered to, at least for the purpose of an injunction, in view of the fact that Mr. Scott contracted in his own name for that work, and had control of it, and the fact that later he took the active management of another company, engaged in similar construction.

By concession, the plaintiff has limited his complaint to 10 claims of the two patents, numbered 853,202 and 853,203, both applied for on

---

May 17, 1902, and issued to him on May 7, 1907. These claims he divides into four typical groups, the first comprising claims 5, 6, 7, and 8, the second 12 and 13, the third 16 and 17, all of 853,202, and the fourth claims 9 and 12 of 853,203, illustrated by claims as follows:

(1) Claim 5 of 853,202: "An arch having a spandrel or railing of concrete or similar material reinforced with longitudinal members near both faces."

(2) Claim 12 of 853,202: "A bridge spandrel of concrete or like material with reinforcements extending across the span both above and below the waterway."

(3) Claim 16 of 853,202: "A concrete bridge having a concrete spandrel extended back of the abutments with upright rods or bars near the ends of the spandrel."

(4) Claim 9 of 853,203: "A bridge of concrete or similar material with reinforcing members embedded transverse to the roadway, in combination with a wall or spandrel with upright reinforcing members embedded."

The infringing structure to which the evidence was directed at the trial is located on the boulevard at North East Park, near Oklahoma City, and was built under contract with the park commissioners of the city, but with certain changes from the original plans. It consists of a concrete bridge, dam, and spillway, with an arch span of 40 feet, and a roadway of 60 feet. A system of reinforcement was employed, by means of steel bars. In the arch, the bars are transverse and longitudinal, but not connected. The latter are in two lines near the faces, and are tied into the abutments. The intermediate and end spandrels contain both upright and longitudinal bars tied by wires, the latter consisting of one line, extended through the crown of the arch, and incased in the abutments. The bars of the arch and spandrels are not fastened together. The spandrels terminate vertically and about equally with the abutments, beyond which are wing walls, reinforced with bars bent and tied into the spandrels. The tops of the intermediate spandrels are flush with the arch crown. The end spandrels are higher, and contain one line each of the horizontal and vertical rods; the latter being close to the termini of those spandrels. The balustrade is reinforced by one line of bars. In the spillway floor, the reinforcement runs both ways, but stops short of the abutments.

For the defense, infringement is denied as to the first, second, and third groups of claims, because (1) it is fairly shown that there is only one line of longitudinal bars in the spandrel, although two were called for in the plans; (2) the rods in the spillway floor concededly do not extend into the abutments; and (3) the spandrels do not extend back of the abutments, rejecting the theory of the plaintiff that this group contemplates their extension back only of the main body of abutments. As to the fourth group, the defendants do not deny infringement, but urge that this group and all the others disclose no invention and were anticipated by prior uses and patents.

The evidence appears to sufficiently establish that the bridge in question differs so materially as to the essentials of description in the first three groups as to defeat infringement in respect of them. But the case may well be disposed of on the ground of the invalidity of the patents.

Assuming that the method adopted in point of construction and reinforcement conforms substantially with the plaintiff's claims, the

question is whether his "improvements" were the proper subject of patents. The inventions described in patent 853,203 are dated back in use by plaintiff to June, 1901. In patent 853,202 he relies on the date of the application for the patent, May 17, 1902.

From a consideration of the evidence, including the expert opinions and explanations, it is found that the several methods of reinforcement employed in the plaintiff's claims here involved are satisfactorily shown to have been covered by the older patents of Monier, Small, Jackson, Hinckley, Hennebique, and Coignet. Without going into the details, the only view deemed justified is that the plaintiff's improvements appear to consist of not more than a varied application of uses there described, and without material distinction in results, at least, not beyond the scope of engineering skill.

The construction of bridges by means of abutments, arches, and spandrel walls is ancient. Their original functions were well known. The valuable discovery of reinforcement was undoubtedly patentable, and it was brought into the art by longitudinal, transverse, and vertical rods or mesh, applicable to bridge construction, before the supposed inventions on which the plaintiff bases his claim to relief. The primary object of all is to stabilize and strengthen the arch and other parts of the structure, and incidentally to promote economy of material. When once such discoveries were patented and published, the adoption of them as disclosed in the various claims of the plaintiff added nothing vital to the art, but was the employment of the same means to attain the like result, varying only in degree, and was for that reason not patentable. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 Sup. Ct. 502, 61 L. Ed. 1136; Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699, 37 L. Ed. 552. The aggregation by him of the reinforcing members did not evolve any new function, and for that reason does not sustain these patents. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196. With the effect of the reinforcement established, as was previously done, the varying location and distribution of the bars or mesh became a matter of calculation and experiment, calling only for engineering or mechanical skill, which uniformly has been held not to be a legal basis for a patent.

Conceding to the plaintiff the full right to the fruits of invention, it seems clear enough that his claims did not arise from that source, and that the defendants and the public as well should have immunity from interference predicated on such claims.

The conclusion that these claims in question were not subject to patent has been reached practically by other courts. As Judge Lewis well said in Luten v. Washburne:

"Complainant in each instance only then made application of mere mechanical knowledge and skill, and that what he did is in no sense a demonstration of inventive genius."

Judge Sater, speaking of patent No. 853,203, in Luten v. Whittier, concurred in that opinion. Judge Wade considered both patents, and came to a like result, in Luten v. Marsh (D. C.) 254 Fed. 701. Judge Munger, in Luten v. Wilson Reinforced Concrete Co. (D. C.) 254 Fed.

107, found that the form of structure in 853,202 (claim 16) was "anticipated by a number of patents and publications, especially by the Von Emperger patent of June 1, 1897, and by the Monier construction," and that claims 9 and others of 853,203, there involved, were anticipated by Monier, etc.

A decree will be entered, dismissing plaintiff's bill, at his costs.