VAN DORN IRON WORKS CO. v. MATHIS BROS. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 12, 1919.)

No. 3230.

PATENTS ⬤⟾328—INVENTION—MAIL BOX.

The Van Dorn patent, No. 827,482, for a mail box, *held* void for lack of invention in view of the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Van Dorn Iron Works Company against the Mathis Bros. Company and the New York Blower Company. Decree for defendants, and complainant appeals. Affirmed.

E. L. Thurston, of Cleveland, Ohio, for appellant.

Thomas A. Banning, of Chicago, Ill., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Suit for infringement of letters patent of the United States, No. 827,482, granted on July 31, 1906, to James H. Van Dorn, assignor to the appellant company, for improvement in mail boxes. The defenses presented are that a construction equivalent to that of the mail box in issue was on sale more than two years prior to filing application for the patent; that the mail box is lacking in invention; that it was designed by one M'Giehan, and not by Van Dorn, the patentee; also laches. The first two defenses were sustained, and the other two not passed on; the bill was dismissed, and the assignee company appeals.

The controversy grew out of differences between competitors for the supply of mail boxes to the Post Office Department. It will be helpful to observe, as far as the record discloses, the course pursued by the department in securing mail boxes. The plan, at least since 1893, appears to have been to select forms of postal package boxes and letter boxes from designs which were submitted by persons wishing to supply the boxes, though subject to such changes and modifications as the department itself might require, and then, under competitive bidding upon the forms so determined, to enter into contracts with the accepted bidders to furnish the boxes.[1]

[1] In accordance with the plan thus described a combination package and letter box, in all material respects the same as the one now in issue, was constructed by the Van Dorn Company and submitted to the Post Office Department in 1900 or 1901, some four years before Van Dorn applied for the patent; but it appears that this box was rejected by the department, and no bids for supplying it were requested or made. In 1900, or thereabout, the Van Dorn Company also constructed a number of combination boxes for the Post Office Department which were used by the postmaster at St. Louis. Upon these transactions, particularly the submission of the first-mentioned box to the department, the court below based its decision that the mail box in suit had been on sale more than two years prior to application for the patent. It should be observed that Isaac S. M'Giehan claims to have devised both of these types of boxes, though, as we have seen, the question whether he devised any of the boxes was not determined below. In our view of the case it will not be necessary to pass on the ruling of the trial judge that the submission of the box in 1900 or 1901, as stated, was to place the box on sale within the meaning of the act of Congress.

Pursuant to bids accepted and contracts entered into under the plan of procedure above described, Isaac S. M'Giehan, through companies managed by him, supplied package mail boxes to the government continuously from 1893 until the latter part of 1903, when the government discontinued ordering boxes under the last contract controlled by M'Giehan. Throughout this period close business relations existed between M'Giehan and J. H. Van Dorn; indeed, Van Dorn's company, the present appellant, constructed for the M'Giehan companies all the boxes they furnished. In September, 1904, against the protest of M'Giehan, the department advertised for bids in accordance with its usual course before pointed out. A contract for a term of four years was awarded under that bidding, and again in 1908, to appellant herein, for the supply of combination package and letter boxes. In 1913, however, a contract to supply such boxes for a period of four years was secured by appellee, Mathis Bros. Company, and the boxes furnished by it were constructed by the New York Blower Company, appellee.

It should be observed that the contracts made with appellant, as stated, one in 1904 and the other in 1908, called for a combination package and letter box, which was the same in construction as the one described and claimed in the patent in suit, and that the contract made in 1913 with the Mathis Company provided for a box like the one furnished by appellant under its contracts. It is consequently admitted that, if the patent is valid, the appellees have infringed it.

Van Dorn applied for the patent January 30, 1905, something more than a month after his company had secured its first contract (December 3, 1904) to furnish this type of mail box, and, as stated, the patent was issued July 31, 1906. The box is of the familiar type used by the government in receiving and gathering mail, and kept at street corners in the various cities of the country. It will be easily recognized in two of the drawings, Figs. 1 and 2:

The specification states:

"The object of this invention is to provide a strong, efficient, and neat mail box which shall have conveniently accessible receptacles for both letters and packages. Each of these receptacles is accessible from the front of the box. * * * *AA'* represent a pair of angle bars, which are bent into the inverted U shape shown, and thus constitute four standards, forming legs for the box and corner pieces for it. The sides of the box are designated *B* and are metal sheets riveted to the angle bars. The back sheet *C* is also riveted to the angle bars and curves over a portion of the top, as at *c*. The bottom of the box (designated *D*) is a sheet having downwardly turned flanges, which are riveted to the sides and back and the angle bars."

The front of the box, Fig. 2, is composed of sheet metal and, for the most part, of the portions associated with the receiving gates, marked "PACKAGES" and "LETTERS," and the exit door *P*, which when closed, covers both the exit for packages, and the supplemental exit door *R* for letters. The box is divided into two compartments; the larger one is designed for the reception of packages, and as shown in Fig 1, comprises the greater part of the interior between the upper receiving gate *E* and the bottom *D*, while the smaller compartment is intended for letters, and, as likewise shown in Fig. 1, consists of the receptacle *N* extending from the lower receiving gate *L* to and including the supplemental exit door *R* (see, also, Fig. 2). Protection against robbery of the mail is secured by inwardly depending extensions (*e* and *L*, Fig. 1) of the respective gates; upon opening the gates these extensions are raised into engagement with guard plates (one called "baffle plate *F*" and the other "hood *K*"), and upon closing the gates they release the packages and letters and in connection with the guard plates guide each class of mail into its proper receptacle. The box is further explained by the claims in issue, 3, 6, and 9, which appear in the margin.[2]

In view of the defense that the box is lacking in the quality of invention, the most natural observation to be made upon the structure is that, when Van Dorn applied for the patent, the prior art, as it appears in this record, disclosed package boxes singly and letter boxes in combination with package boxes. The initial inquiry then is wheth-

---

[2] "3. In a mail box, in combination, a package receptacle having an opening in the lower portion of its front side and door for closing said opening, a letter receptacle located within the package receptacle and above the bottom thereof, but extending below the upper end of said opening, whereby the exit door for the package opening overlaps the letter box and a supplementary door for the letter box adapted to swing outwardly through said opening."

"6. In a mail box, the combination of a comparatively large package receptacle, a comparatively small letter receptacle within the package receptacle on the front side thereof and above the bottom thereof, a pivoted gate for the package receptacle, a plate extending from such gate to the front of the box, a hood secured to the under side of such plate and extending downward into the letter receptacle, and a letter gate operating in such hood."

"9. In a mail box, in combination, a pair of angle bars bent into the form of an inverted U and thus constituting four corner posts, each angle bar being flat near its edges and intermediately bulging from one flat edge to the other, and walls for the box having their edges within the bulging portion of the angle bar, said walls being held in place by rivets passing through the flat portion of the angle bars, one of said walls substantially abutting the other within the bulging portion of the angle bars."

er the patent shows any advance over the prior art which can be said to signify invention rather than skill.

The arguments of counsel amount to a concession that the unpatented mail boxes which had in fact been on sale or in public use for more than two years before the date of the patentee's application are to be treated as part of the prior art, as well as boxes designed for kindred purposes and covered by patents issued prior to the patent in suit. The package boxes required and furnished under contracts with the Post Office Department in 1893, 1897, and 1901, which passed into the control of the M'Giehan companies as stated, were in form and material and construction substantially the same as the patented mailbox, save that they were not equipped with a receiving gate and receptacle for letters, or with angle bars bent into the inverted U shape described in the patent; they were, however, equipped with metal supports in the form of legs disposed at the lower corners of the box. The similarities between the mail box in issue here and the structures used under these contracts are sufficiently illustrated by the following exhibits, showing the interior and exterior of one of the two forms of boxes furnished under the contract of 1901:

 

It is particularly to be observed of the boxes thus illustrated that the lines indicating the receiving gate with its depending extension, the baffle plate, and the exit door were in every material respect the same as those parts of the patented structure ($E$, $e$, $F$, $P$, Fig. 1), and that the feature of accessibility at the front of the box, both for depositing and removing mail matter, which is here relied on as a distinguishing characteristic of the patented structure, in fact existed in these earlier boxes.

We may now look into the prior art in relation to the letter box and its association with the package box of the patented structure.

The De Mets patent of 1872, No. 132,954, for an improvement in post office letter boxes, states in the specification:

"My invention relates to the enlargement of the boxes and separation of them into receptacles for letters and printed matter, respectively; the object being to give additional security and symmetry, as well as to supply a receptacle for printed and bulky matter, now totally wanting."

The exterior of the structure differed from that of the patent in suit, but the interior comprised two receptacles, one for letters and the other for packages, which in relative dimensions and in arrangement were similar to those of the box in suit, though the packages were received in the smaller receptacle; the openings G and F to the package and letter receptacles respectively, were disposed similarly to the receiving gates of the present mail box. While the letters and packages, it is true, were deposited through openings in the front of the box, they were removable through a door maintained at the rear, which led directly into the letter box and indirectly (through an interior downwardly sliding door D) into the package box; in a word, the facilities for removing the mail matter through the main and supplemental exits at the rear of that structure were to all intents and purposes the same as the means designed for such removal through the main and supplemental exits at the front of the patented structure.

The Maize patent of 1884, No. 294,483, for an improved letter box, consisted of a box of rectangular form and having two receptacles, one above the other; the upper being designed for packages and the lower for letters. Both receptacles were accessible for depositing mail at the front through openings provided with suitably hinged drop lids with fixed stops. Specific means to prevent abstraction of mail deposited in the box appears to be provided at the upper opening, and the form of the lower opening would seem in itself to prevent abstraction. Removal of the mail was to be made through a single door maintained at the side of the box and covering both receptacles.

Rosenthal was granted a patent in 1889, No. 410,379, upon an improved letter box with two transverse compartments, one adapted to receive letters and the other papers and similar articles. The mail matter was all deposited and removed through suitable openings in the front of the box. Each compartment, it is true, was provided with a door; but, as stated in the specification and shown in the drawings, the doors were so connected that when "the upper door is opened the lower door will be automatically opened also, and vice versa," and a single lock placed upon the upper door served, through the connecting device mentioned, to fasten both doors.

The Spear patents, Nos. 479,576 and 481,772, one of July 26 and the other of August 30, 1892, show "a mail box having two separate compartments with a common door," and the difference between that structure and the one now in issue is that Spear located his door at the side, instead of the front, as in the instant patent. In all other respects the two structures are substantially alike, despite the fact that Spear provided for a third compartment and for "fingers," as they are called, instead of baffle plates, to prevent abstraction of the mail.

Metcalf's patent in 1894, No. 527,614, was for a letter and package box comprising two adjoining and perpendicular compartments, with receiving and exit openings which were all accessible at the front of the box. Packages were deposited upon platform *G* (after raising lid *C* at the front portion of the circular top), whence they were carried by a revolving tray into the rear compartment, with full protection against abstraction of the mail; and letters were deposited through a suitable opening into the front compartment at a point immediately below the normal horizontal level of two arms of the package tray. Removal of the letters was effected through an outwardly swinging door with quandrant flanges and hinged at the front lower edge of the letter compartment; and the packages were reached through this door and an additional one hinged at the bottom of the partition between the two compartments. Still other patents appear in the record, and their teachings are more or less pertinent; but we do not think it necessary to pursue the subject.

Plainly, then, at the time the patent in suit was applied for, the idea, if not the practice, of uniting package and letter receptacles with suitable appliances in a single inclosure, and so as to render them accessible on one side or another, and, indeed, wholly in front, for depositing and removing the mail, was old. It is true that the receptacles varied in form, location, and dimensions, and that the openings for depositing and removing the two classes of mail likewise varied in these respects, and also in means of protection against theft and effects of weather; and yet, as applied to the patented structure, these variations were negligible, since, in the sense of equivalency, the essential parts of that structure were old, and they severally operate here in the same way as they operated before, and effect the same result. This is sufficiently shown by the obvious identity in form and function between the gate *E* with its depending extension *e*, baffle plate *F*, and exit door *P* (Figs. 1 and 2, supra, of patent in suit), and the corresponding parts of the earlier package boxes (illustrations thereof, supra), on the one hand, and the gate with its depending extension *L*, hood *K*, and the supplemental exit door *R* (Figs. 1 and 2, patent in suit), on the other hand. The supplemental exit door *R* not only finds analogy in exit door *P*, but in point of equivalency exit door *R* cannot be differentiated from the supplemental exit door of either De Mets or Metcalf. The feature of accessibility at the front of the box for both depositing and removing mail was old, not alone in respect of the earlier post office package boxes on sale and in use from 1893 until the latter part of 1903, as already pointed out, but also as shown in the Rosenthal and Metcalf patents. In view of these last-mentioned patents no advance was made in the patented structure by simply extending the exit door of the old post office boxes, as was done, so as to cover the exits of both the package and letter receptacles of the box in suit.

It remains to notice the features of the patent in suit which involve angle bars "bent into the inverted U shape shown." We cannot think it necessary to dwell on these devices. We are satisfied from the testimony, if indeed we may not take judicial notice of the fact, that

angle bars of this form and of different weights have been on sale in the market for many years. They have been commonly known as "ridge roll," and used in the construction of "ridge roofs," and also in reinforcing boxes and putting a finish on them; one witness testifying that this form of angle bar is used to "hide the seam and the defects from the riveting, the marks, and also it is an ornamental affair for the box." It is also shown that "cutting slots or notches" in one of the flanges of the angle bar for the purpose of bending the bar into the "U shape" mentioned, was well known to the mechanic. It appears that in the contract made by the Post Office Department in 1897 for package boxes the contractor was required to make the corners of the boxes "round," and we think it may fairly be inferred that the use of the present form of angle bar grew out of that requirement. However this may be, it is manifest that the remedy for rough or unsightly edges of a mail box would be found in an order addressed to the skilled mechanic. It is too clear for argument that the extension and use of these angle bars as legs for the box added nothing of patentable importance to the metal legs previously used.

We are thus led to believe that the patent shows no advance over the prior art which can be said to signify invention rather than skill, and, consequently, that the defense of lack of invention was rightly sustained. The rule laid down in Werk v. Parker, 249 U. S. 130, 133, 39 Sup. Ct. 197, 63 L. Ed. 514, is at once applicable and controlling. In respect of certain combinations there claimed under two divisional patents relating "to an oil press mat or cloth for use in the extraction of cotton seed oil," it was said by Mr. Justice Pitney:

"And this, in our opinion, goes no further than a mere mechanical adaptation of familiar materials and methods, not rising to the dignity of invention."

See, also, decisions of our own court in Huebner-Toledo Brew. Co. v. Mathews Grav. Carrier Co., 253 Fed. 435, 446, 447, —— C. C. A. ——; Luten v. Whittier, 251 Fed. 590, 596, 163 C. C. A. 584; Windsor v. Mercier, 253 Fed. 448, 450, —— C. C. A. ——.

The decree is affirmed.