LUTEN v. WILSON REINFORCED CONCRETE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1920.)

No. 5189.

PATENTS ⬅≈328—FOR REINFORCED CONCRETE BRIDGES VOID FOR WANT OF INVEN-
TION.
  The Luten patents, Nos. 853,202, 853,203, 818,386, and 999,663, for re-
inforced concrete bridges, *held* void for want of invention.

Appeal from the District Court of the United States for the Dis-
trict of Nebraska; Thos. C. Munger, Judge.

Suit by Daniel B. Luten against the Wilson Reinforced Concrete
Company and others to restrain infringement of patents. From a de-
cree holding three of the patents invalid for want of invention, and
the fourth not infringed (254 Fed. 107), complainant appeals. Decree
modified, so as to hold the fourth patent also void, and, as so modified,
affirmed.

Russell T. MacFall, of Indianapolis, Ind. (Frank H. Drury, of
Chicago, Ill., and Frank M. Hall, of Lincoln, Neb., on the brief), for
appellant.

Wallace R. Lane, of Chicago, Ill. (Clarence A. Davis, of Lincoln,
Neb., and William F. Moran, of Nebraska City, Neb., on the brief),
for appellees.

Before HOOK, Circuit Judge, and AMIDON and BOOTH, Dis-
trict Judges.

AMIDON, District Judge. This suit was brought by Daniel B.
Luten against the Wilson Reinforced Concrete Company and others
to restrain infringement of letters patent 853,202, 853,203, 818,386, and
999,663. The case was heard upon elaborate proofs, and the bill
dismissed on the ground that patent 999,663 was not infringed, and
that the others were void for want of invention. 254 Fed. 107. The
case was heard in this court at the same term as Luten v. Young and
Luten v. Allen, 263 Fed. 986, —— C. C. A. —— (opinion in which is
concurrently filed). There is advantage in getting as many of the
numerous patents issued to Mr. Luten as possible under examination
at the same time. It would aid in determining the merits of each, if
the same court could see them all at a single view. That result can
now be accomplished to some extent from reported opinions involv-
ing his patents. Luten v. Washburn, 253 Fed. 950, 165 C. C. A. 392;
Luten v. Sharp, 234 Fed. 880, 148 C. C. A. 478; Luten v. Whittier,
251 Fed. 590, 163 C. C. A. 584; Luten v. Allen (D. C.) 254 Fed.
587; Luten v. Young (D. C.) 254 Fed. 591; Luten v. Marsh, 254
Fed. 701 (Southern District of Iowa); Luten v. Scott, 263 Fed. 721
(Western District of Oklahoma); In re Luten, 37 App. D. C. 379.

In so far as we can discover, none of the Luten patents has ever
been sustained in a contested case, and they have been frequently
held to be invalid for want of patentability. Notwithstanding this

⬅≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

experience, these patents have been exploited by a skillful campaign of advertising, in which it has been repeatedly asserted that no suit based on a Luten patent has ever been lost or dismissed. This work has been done through the agency of the National Bridge Company of Indianapolis. The record in this case leaves no room for doubt that the entire scheme by which it has promoted these patents has been fraudulent. We shall call attention to a few of the more glaringly culpable of the representations, quoting in the main the exact language of the circulars:

(1) "The National Bridge Company of Indianapolis, Ind., now owns 17 Luten patents on cost-saving devices in concrete bridges. Forty-seven other applications for Luten patents are still pending. Several of the above patents have been declared valid in the United States Circuit Courts, with injunctions issued against infringers, and numerous other suits for infringement are being filed. No infringement suit based on a Luten patent has ever been lost or dismissed."

(2) A skillfully printed advertisement, headed "Luten Patent Decrees," lists the patents, 24 in number, and states under each patent the court and title of the case in which a consent decree had been obtained, without disclosing that the decrees were by consent. By repeating the cases under the several patents involved, without calling attention to that fact, the impressiveness of the showing to a casual reader is greatly enhanced.

(3) Another advertisement headed, "To Whom It may Concern," lists 16 patents, with date of issue and year of expiration. It states:

"The above 16 patents contain 290 claims.

" * * * If one of these claims be infringed, the owner of the patent may collect royalty and costs in a suit for an injunction. If it be shown that the infringement was knowingly made, punitive damages to the amount of three times the actual damages proved may be assessed by the court. * * *

"If a judgment cannot be collected from a municipality, county or town, as, for example, when a board refuses to settle for infringements by its predecessors in office, a judgment may be enforced against the individual officers who authorized the infringement and their private property sold on execution to satisfy the judgment.

"If two or more parties infringe in the same structure, as when a contractor builds for a municipality on designs furnished by an engineer, the owner of the patent may elect which of the three he shall prosecute, the engineer, or the municipality, or the contractor, and may sue any or all of them. * * *

"The validity of the patent does not depend on the state of the art at the time the patent was issued. It depends to some extent on the state of the art two years before the patent was applied for. Many of the above patents were under examination by the Patent Office for many years before they were issued. * * *

"If it be shown * * * that a single claim of a valid patent is being infringed, the court will issue an injunction forever restraining the continuance of the work and assessing costs and damages. An injunction to restrain future infringements may issue before or after the work is completed. * * *

"Such a suit is never tried before a jury. State courts have no jurisdiction. Suit may be brought in any part of the United States, without the employment of local attorneys. The principal items of expense in such cases are attorney fees, traveling expenses in taking depositions, printing the record, which may amount to thousands of dollars in severely contested cases, and court costs."

The advertisement then calls attention to two specific cases in which the cost of the litigation amounted to from $40,000 to $50,000.

(4) Another showing is a collection in separate documents of all the consent decrees.

(5) Another advertisement sets forth that 15,000 designs for concrete bridges have been supplied under the Luten patents, and over 6,000 of them have been actually erected.

The foregoing elements have been used in a brilliant campaign of promotion. The arts of the advertiser and the photographer have been brought to a perfection seldom equaled. All the above themes have been pressed with masterful skill in that form of argumentation which is peculiar to the patent lawyer and the patent expert—a union of science and logic. We call attention to only two of the most reprehensible features of this campaign of deception by the use of half truths: First, the use of consent decrees throughout the entire literature, without disclosing that they are by consent, and not the result of litigation; second, the threats of patent litigation. This has been practiced with a studied use of menacing arts that would have been blackmail on a vast scale, if the threat had only been criminal, instead of civil, prosecution. In law this is a saving distinction, but not in ethics.

We have examined the patents here directly involved, and the others contained in the record, and the numerous patents of the plaintiff which have been described in the cases to which we have referred. We are convinced that they are all void for want of patentable invention. Not one of them has ever been sustained in a contested case. They ought not to be. The use of steel to reinforce concrete was more than a quarter of a century old when Mr. Luten entered the field in 1902. The history of the art is given by this court in Luten v. Washburn, 253 Fed. 950, 165 C. C. A. 392, and the Court of Appeals of the Sixth Circuit in Luten v. Whittier, 251 Fed. 590, 163 C. C. A. 584. He has added nothing that is patentable to the art. All he had done is to make such modifications, either in the arrangement of the rods or their form, as in his judgment would best meet the stress of the particular structure. That is the work of the engineer. There is nothing generic about any of his patents. Judging by his drawings and specifications, and the multitude of his patents and applications for patents, what he has done is to prepare drawings and specifications for a particular bridge, then put these in the form required by the patent law, and present them with the necessary fees to the Patent Office as an application for patent. When one considers the number of patents granted, and applications pending, he has met with an inexplicable success.

While Mr. Luten has made no invention, he has made a great discovery, namely, that not more than one city or county attorney or Attorney General in 10 knows anything about patent law, or the proper interpretation of consent decrees in that field. It has resulted that cities, counties, and states have been easy victims for the peculiar arts of the National Bridge Company, for they were without trustworthy legal advice. With the above elements to play upon, it has been easy to convince public authorities that the way of safety was the way of wisdom, and that this consisted in employing Mr. Luten as an engineer, or paying him 10 per cent. royalty for the use of his patented device.

Mr. Luten is entitled to all the advantages which belong to him as an engineer. That is the full measure of his right. He is entitled to nothing under the patent law. At a time when many of the states

are appropriating tens of millions of dollars for good roads, and each of these appropriations is being duplicated by the federal government, and reinforced concrete bridges are indispensable factors in these great enterprises, a continuation of the bridge company's practices under these void patents would be a grave public wrong.

The decree is modified, in so far as it holds patent No. 999,663 not infringed, so as to hold it also void for want of patentable invention, and, as so modified, the decree is affirmed.

HOOK, Circuit Judge, concurs in the result.