MUNISING PAPER CO., Limited, v. AMERICAN SULPHITE PULP CO.

(Circuit Court of Appeals, Sixth Circuit. December 10, 1915.)

No. 2649.

1. PATENTS ⊜⇒328—VALIDITY AND INFRINGEMENT—PULP-DIGESTER LINING.

The Russell reissue patent, No. 11,282 (original No. 445,235), for a pulp-digester lining of cement, was not anticipated and discloses patentable invention; the construction shown being of practical utility. Also, *held* infringed.

2. PATENTS ⊜⇒66—ANTICIPATION—PRIOR PATENTS.

Prior patents are part of the prior art only by what they disclose on their face.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⊜⇒66.]

3. PATENTS ⊜⇒52—ANTICIPATION—PRIOR PATENT.

Prior accidental production of the same thing, when the character and function were not recognized until the invention of the later patent, does not effect anticipation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 70; Dec. Dig. ⊜⇒52.]

4. PATENTS ⊜⇒66—ANTICIPATION—PRIOR PATENT.

Anticipation is not disclosed by a patent drawing which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention and was not designed, adapted, or used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⊜⇒66.]

5. PATENTS ⊜⇒240—INFRINGEMENT—PATENT FOR IMPROVEMENT.

That a patent is for a patentable improvement upon the invention of a prior patent has no tendency to negative infringement of the prior patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. ⊜⇒240.]

6. PATENTS ⊜⇒319—DAMAGE FOR INFRINGEMENT—INTEREST.

When an established license fee for the use of a patented device is shown, the court may properly accept it as measuring the damages recoverable from an infringer, and allow interest thereon from the time the license fee should have been paid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. ⊜⇒319.]

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in equity by the American Sulphite Pulp Company against the Munising Paper Company, Limited. Decree for complainant, and defendant appeals. Affirmed.

Henry Schreiter, of New York City, for appellant.

A. P. Browne and F. T. Benner, both of Boston, Mass., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. [1] Suit for infringement of reissued patent to Russell, No. 11,282, November 15, 1892, for an improvement

in digesters for manufacturing by the·"sulphite process" wood pulp used in paper manufacture. The digester (which is usually of the rotary type) is a large structure frequently 50 feet in height or more, and has a metal shell, usually of iron or steel, about one inch in thickness. The wood pulp to be "digested" is placed in the digester in small pieces and there treated with the bisulphite of lime solution under intense heat and high pressure. The acid of the bisulphite solution is quickly destructive of the metal shell, and it has always been necessary to protect the latter by some acid-resisting agency.

Mitscherlich's patent, No. 284,319, September 4, 1883, disclosed a lining of thin sheet lead applied to the interior surface of the shell by a cement of tar and pitch, and covered with a lining of brick. Reynolds' patent, No. 423,531, March 18, 1890, disclosed a lining made by coating the inner surface of the shell with a paste of red lead, and an interior structure of brick with lead joints; a "fluid chamber" being left between the shell and the brick structure. The specification of Pierredon (French patent No. 154,589, March 31, 1883) disclosed a lining composed of "square blocks of stone or brick, preferably volvic stone [quarried lava], set in a mortar of Portland cement" so as to fill the joints to about half their height; the remainder of each joint being filled by melted lead. In all three of these patents lead was relied upon as the acid-resisting element.

Russell believed that he discovered a fact unknown until demonstrated by him, "that a cement lining would stop the passage of the acid solution to the digester shell" in spite of the high temperature and steam pressure (sometimes as high as 100 pounds to the square inch). His specification discloses "a continuous lining or coat * * * of acid-resisting material, applied in a plastic condition" upon the interior of the shell of the digester. He says that:

"This lining or coating is of the nature of a cement, and may be composed of any material or mixture of materials which is acid-resisting and capable of being made plastic and adhesive to the shell of the digester, and so compact as to prevent the acid solution from reaching the iron shell in consequence of the high steam pressure required in practice."

He also names, as "a convenient material for the purpose," "commercial cement, preferably Portland, made plastic with water and applied with any suitable implement upon the interior of the digester shell, so as to form a continuous cover therefor," adding that "other cement-like materials or mixtures having similar properties or characteristics may be used, as the ordinary cement mixtures, sand, and Portland cement, sand, and tar, and the like." He disclaims (for several reasons) a lining "comprising a layer or coat of masonry or brickwork laid in cement," saying "this feature may be entirely dispensed with where my improvement is adopted." He also disclaims a lining of sheet lead between the brick or tile lining and the digester shell. His disclaimer thus includes Mitscherlich and Reynolds, whose lead paste he considered the equivalent of Mitscherlich's sheet lead. The Pierredon patent was not referred to. Russell's specification states that it will be found in practice that the friction of the mass of pulp within the digester, particularly one of the rotary pattern, is likely under some

circumstances to mechanically wear away his lining, which result may be remedied by setting an inner lining of tiles upon the continuous cement lining, "the plasticity and adhesiveness of which may be utilized to hold the tiles in place," stating that "in many cases, however, the use of this inner lining of tiles will not be found necessary." The patent has but two claims, which we print in the margin.[1]

The appeal before us is from the decree of the District Court upon hearing upon pleadings and proofs, adjudging the patent valid and infringed and awarding damages to complainant. The defenses here presented are, first, that the reissued patent is invalid because the original patent was itself invalid; and, second, noninfringement.

In American Sulphite Pulp Co. v. Howland Falls Pulp Co. (1897) 80 Fed. 395, 25 C. C. A. 500, the Russell patent was passed upon by the Circuit Court of Appeals for the First Circuit, in an elaborate opinion by Judge Aldrich. It was there held that the first claim was intended to cover cementitious mixtures which could be applied in a plastic condition and which would adhere to the outer shell and become a part of it, and so compactly form and harden under pressure and process of application as to prevent the acid from reaching the iron; and that Russell "should not be limited to such materials in the class of cementitious mixtures as he had chemically and commercially isolated as individuals, but that his claims and description should be construed as including all cementitious mixtures which ordinarily skilled practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art without invention." The court concluded that Russell was the first and original inventor of the device of the patent, and that "the patent is valid, and protection should be commensurate with the invention stated in the claims and the discovery and process described in the specification; and in our view the patent covers homogeneous structural linings composed of adhesive, acid-resisting materials in the nature of cement, which possess the required qualities described in the specification." The second claim seems impliedly, at least, to have been held valid.

Upon a contested application in American Sulphite Pulp Co. v. Burgess Sulphite Fiber Co. (C. C.) 103 Fed. 975, Judge Putnam, following the decision of the Circuit Court of Appeals in the Howland Falls Case, awarded a preliminary injunction as to certain digesters there involved.

In American Sulphite Pulp Co. v. De Grasse Paper Co. (1907) 157 Fed. 660, 87 C. C. A. 260, the Russell patent was before the United States Circuit Court of Appeals for the Second Circuit. The only defenses there presented where a denial that Russell was the inventor of the improvements described in the patent, and an allegation that the

[1] "1. The improved pulp-digester herein described, having an outer shell A and a continuous lining or coat B of cement, as described, applied to the interior of the said shell, for the purpose set forth.

"2. The improved pulp-digester herein described, having an outer shell A, a continuous lining or coat B of cement, substantially as described, applied to the interior of the said shell, and an interior lining of tiles C, all substantially as set forth."

reissue was invalid. There being no prior art before the court, the case was heard as if on demurrer to the bill. The Reynolds and Mitscherlich patents (referred to in the patent in suit) were tested so far as there disclosed as affecting Russell's invention. The patent was held on its face valid, and it was thus at least impliedly held that there was nothing in the Mitscherlich and Reynolds patents which, as matter of law, precluded invention. The court, speaking through Judge Coxe, saw "no reason to differ with" the Court of Appeals of the First Circuit in its construction of the patent as contained in the two paragraphs we have already quoted.

[2] The alleged grounds of invalidity to be considered are: First, that Russell was anticipated by Pierredon and others; and, second, that the Russell patent discloses no invention. Defendant has, of course, the burden of proving anticipation by clear and convincing evidence. Enough has already been said to show that neither Mitscherlich nor Reynolds anticipated Russell, and we are cited to no other disclosures except Pierredon justifying specific mention. Pierredon's specification does not disclose a continuous lining of cement or cementitious mixtures next to the digester shell. There is nothing in his claims containing such suggestion. It is obvious that it never occurred to him that cement had in the slightest degree capacity to resist the digesting acid. True, one of the drawings accompanying the specification, and referred to therein as representing "in plan and in section some of the assembled square blocks," shows, if we assume it was drawn to scale, a substantial thickness of cement between the stone blocks and the shell; but it is nowhere said that the figure is drawn to scale, and the manifest design was only to show the assembling of the blocks. Prior patents are part of the prior art only by what they disclose on their face. Naylor v. Alsop Process Co. (C. C. A. 8th Cir.) 168 Fed. 911, 920, 94 C. C. A. 315. We are not justified in concluding that Pierredon disclosed or intended to disclose more (as respects cement lining) than a "lining comprising a layer of masonry or brickwork laid in cement," disclaimed by Russell. Pierredon's device is not shown to have been operative or applied to actual use.

[3, 4] The case of Pierredon is thus not within the rule which gives an inventor the benefit of his complete discovery, although he may not have appreciated or known its full uses, for he made no discovery so far as cement lining is concerned. The case falls rather within the rule that prior accidental production of the same thing, when the character and function were not recognized until the invention of the later patent, does not effect anticipation. Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279; Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825, 36 L. Ed. 658; Wickelman v. Dick (C. C. A. 2d Cir.) 88 Fed. 264, 266, 31 C. C. A. 530; Canda v. Michigan Iron Co. (C. C. A. 6th Cir.) 124 Fed. 486, 492, 61 C. C. A. 194. And that anticipation is not disclosed by a drawing which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention, and was not designed, adapted, and used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished

by the second inventor. Brill v. Third Ave. Railroad Co. (C. C.) 103 Fed. 289; Gray Telephone Co. v. Baird Co. (C. C. A. 7th Cir.) 174 Fed. 417, 421, 98 C. C. A. 353. We think the defense of anticipation is not made out.

The allegation that Russell's patent disclosed no invention is a distinct challenge of the truth of his alleged discovery declared in the specification that a cement lining would stop the passage of the acid solution to the digester shell. The question whether a cement lining would·in fact protect the shell from acid was not litigated in the Howland, Falls Case for the sufficient reason that the proposition was not there denied; and what we have said of the history of the De Grasse Case negatives the existence of the question there. There are several considerations which operate to throw on defendant a heavy burden with respect to the defense in question. Among these considerations are the vigorous defense presented in the Howland Falls Case, it appearing by the statement of Judge Coxe in the De· Grasse Case that "in the prior litigation 94 anticipatory patents, 40 prior publications and 57 alleged instances of prior use were set up"; the fact of the alleged admission in the Howland Falls Case that Russell's lining was acid-resisting, that is, that it would stop the passage of the acid solution to the digester shell, which admission would seem presumably to be based on tangible experience somewhere; the fact that such defenses were omitted in the De Grasse Case; the express testimony of experts·in the Howland Falls Case, which the Circuit Court of Appeals said "abundantly shows that there exists in cementitious mixtures generally when formed of acid-resisting materials a common hot-bisulphite-resistant quality"; the conclusion of Judge Putnam in the Howland Falls Case that "it is evident that in the practical judgment of a large portion of those who manufacture pulp with the aid of acid it accomplishes what the art has been looking for"; that when the testimony in the instant case was taken, of the 330 sulphite pulp-digesters in use in the United States, two-thirds were licensed under the Russell patent.

Upon the trial in the instant case the testimony in the Howland Falls Case was supplemented on both sides by considerable new testimony, some of it scientific, much of it devoted to actual experience with the Russell linings, which experience of course had continued for several years since the Howland Falls litigation. The testimony ranged from a denial, on the one hand, that hydraulic cement has of itself any appreciable acid-resisting quality, including testimony, based on experience, that Russell's cementitious linings have not in fact afforded substantial protection to the digester shell for any considerable length of time, to testimony, on the other hand, sustaining Russell's claims for his invention, and, concretely, that his linings have been shown by actual experience to be at least acid-resisting, and that they afford not only substantial but practical protection to the shell when relieved from the mechanical scouring effect of the contents. The testimony on this subject cannot satisfactorily be reconciled, but from all the evidence, scientific and nonscientific, we think the following situation can fairly be deduced:

Russell had apparently an exaggerated idea of the effectiveness and permanency of his cementitious mixture as an acid-proof agent; his views seem to have been shared by many practical operators; his mixture is not strictly acid-proof; on the other hand, his linings of cementitious materials do possess utility and acid-resisting qualities to a substantial degree, the extent of the protection depending largely upon the care and skill with which the mixture is compounded, prepared, and applied; the protection is not permanent if the digesting acid is allowed to come into direct contact with the cement mixture; at the least the friction of the wood material in motion and under high pressure wears off the inner surface of the lining, causing disintegration and mingling of lime with the mixture; from an early period Russell's linings have been in practice protected by a facing of acid-resisting tile contacting with the pulp mixture; one of the problems has been to provide a pointing for the joints between the tiles which would prevent the escape of the acid therethrough. Cement mortar was found ineffective; the pointings now in use are of litharge (oxide of lead) made plastic with glycerine, to which mixture is sometimes added Portland cement, sometimes also sand or pulverized quartz; such pointings, while being to a greater extent acid-resisting, are not durable, for the contraction and expansion of the tiles (as well as the scouring action of the pulp mixture) creates fissures between the pointing and the tiles, making necessary frequent inspection and actual repointing at intervals varying in experience from two weeks to two months. Just how far such tile facing would be necessary to the protection of the cement lining from the chemical action of the acid solution, if relieved from the pulverizing of the cement caused by the breaking of the surface through the friction of the wood mass, and the consequent disintegration, is not clear; perhaps the use in later years of stronger digesting liquor has made the linings more vulnerable. Just how long Russell's linings would last without the tile facing, and apart from the mechanical or scouring action referred to, cannot be accurately stated. There is credible testimony that acid has been known to work through the joints between the tile without reaching the shell and without apparently damaging the lining—mere discoloration of the surface next to the tile appearing. It satisfactorily appears, however, that some of his cement linings, entirely unprotected by tile facing or otherwise, were in active use for periods of a year to a year and one-half without the penetration of the acid to the shell to any extent, although there was appreciable wearing away of the surface of the lining, in some cases at least. We are satisfied that Russell's cementitious lining, as conceived by him, possesses practical utility and acid-resisting qualities to a substantial degree. We think it clear that Russell was the first to perceive that such lining had utility in the direction stated; and the defense that the patent does not disclose invention is, in our judgment, not sustained.

We find nothing in the prior use of cement linings in open vessels for heating hot acid solutions anticipating invention in the use of such lining in the bisulphite pulp manufacture. This feature was suffi-

228 F.—45

ciently considered by the Court of Appeals for the Second Circuit in the De Grasse Case.

In our opinion the Russell patent is valid, and must be construed as covering broadly the continuous digester linings composed of cementitious acid-resisting mixtures applied in a plastic state to the outer metal shell, and adhering thereto, so as to furnish protection to the shell from the acid.

We thus come to the question of infringement. The construction of defendant's lining seems to be this: There was applied by trowels to the inner surface of the digester shell a continuous layer of plastic, adhering, quickly-setting cementitious material about one inch in thickness; against this layer of cementitious material there was laid a course of tile in the same material, the tiling being laid following the carrying up of the cement to a height of 18 to 24 inches; on this course of tile was plastered a continuous course of the same material of a thickness of about one-half inch to one inch (according to the differing statements of the witnesses); against this second coating was laid a second course of tile in the same material; and so on until the lining was carried completely up.

The third claim of the Panzl patent (No. 644,367, February 27, 1900) calls for a composition for acid-proof linings consisting of 26 per cent. hydraulic cement, 12 per cent. chamotte (a species of specially pure calcined clay), 21 per cent. of quartz, and a suitable quantity of diluted silicate of soda. This claim was held valid by the Circuit Court of Appeals for the Second Circuit in Panzl v. Battle Island Co., 138 Fed. 48, 70 C. C. A. 474. The cementitious material used by defendant is made according to the formula of this claim, with the addition of finely crushed slag and hard pitch. (Defendant's linings are—as are apparently Panzl's linings universally—protected by a tile facing whose joints are pointed with a mixture of litharge and cement made plastic with glycerine, which, in the case of defendant's digesters at least, requires renewal about once in two months.)

[5] Infringement is denied upon the grounds: (a) That Panzl's cementitious mixture is not covered by the Russell patent, but is of a fundamentally different nature, involving invention over Russell and protected by patent; and (b) that it is not the continuous cement lining of the Russell patent, but is in substance a layer or coating of masonry or brickwork laid in cement, which construction was disclaimed by Russell in his patent. The fact that the Panzl mixture is the subject of valid patent is not material. Patentable difference has no tendency to negative infringement. As said by Judge Denison, speaking for this court in Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 585, 112 C. C. A. 185:

"It [patentable invention] may just as well be based upon infringement, plus improvement, and improvement may lie in addition, simplification, or variance."

See, also, Murray v. Detroit Spring Co. (C. C. A. 6th Cir.) 206 Fed. 465, 467, 124 C. C. A. 371.

The case is not within the exception suggested in the Youngstown Case, for the Russell patent is generic, while the Panzl patent relates

only to a specific mixture which is applicable for use in connection with the generic Russell patent. The consideration that the Circuit Courts of Appeals in the Howland and De Grasse Cases limited the claim to such cementitious mixtures as would naturally develop "without invention" impresses us as without force. The expression "without invention" was, in our opinion, inadvertent, for the law recognizes no such limitation in cases such as this.

Disregarding proportions used, Panzl's ingredients are plainly within the scope of the Russell patent. The fact that by the proportions adopted Panzl has (as claimed) caused such chemical changes to take place as to produce a chemically different substance which is acid-proof, instead of merely acid-resisting cement, is not, in our opinion, a result so fundamentally different as to avoid infringement, which we think does not depend upon the chemical equivalency of defendant's mixture with that employed by plaintiff. Russell was striving to accomplish that very thing. His was the broad conception that cementitious materials could be, and he thought they were by him so combined as to produce an acid-proof mixture in the sense of resisting the action of the acid so far as to prevent its reaching the shell. It is by improving upon Russell, through ascertaining the particular ingredients to be mixed with the hydraulic cement and their exact proportions, that Panzl has succeeded as is claimed. This was invention, and meritorious invention, whether or not his broad claim that his mixture is absolutely acid-proof is well founded. But defendant's use of Panzl's formula for the specific cementitious mixture infringes (because it employs) Russell's broader invention of a continuous lining of cementitious, acid-resisting material. We are aware that a different conclusion has been reached by the District Court for the Northern District of New York, in American Sulphite Pulp Co. v. Hinckley Fiber Co. (D. C.) 217 Fed. 57; but we cannot agree with that conclusion.

The determining question thus is whether defendant's lining, including, as it does, two layers of cement mixture, one of which is plastically applied and adheres to the shell, the two layers completely embracing between them the layer of tile, is in substance and spirit a continuous lining of cementitious material, or whether it is merely masonry or brickwork laid up in cement. Pierredon not having anticipated Russell, because not disclosing a cementitious lining, may be disregarded upon the question of infringement. The thickness of the cement lining is important only as it affects the ultimate question we have just stated. The inventor's statement in the specification that he finds in practice that "with a lining composed of sand and Portland cement a layer of from three to five inches suffices to prevent acid from reaching the metal shell" is not conclusive that the thickness mentioned is necessary. He later found in practice that much less than this was enough, that he had been employing too high "a factor of safety." The inclusion of a layer of tile between two substantial layers of stone-like cement may well have the same effect as a layer of cement thicker than either layer so employed, or even thicker than the aggregate of the two. The fact that the specification of Panzl's later patent

(No. 744,601—1903) states that the cementitious lining there described "need not be more than one inch thick" has some pertinency. The specific method of applying the cement lining, whether by plastering upon the shell or by pouring in grout between the shell and a wall of masonry, is not the test of infringement. We think defendant's construction is in substance and spirit the continuous lining of cementitious material upon the digester shell within the meaning of the Russell patent. We think this conclusion accords with the decision of the Circuit Court of Appeals in the De Grasse Case, and that it is in harmony with what, upon careful consideration of Judge Putnam's opinion, we think was made the test of infringement in the Burgess Case. In our opinion infringement is established.

[6] Plaintiff was awarded as "profits and damages" on account of the infringement, a sum amounting to 70 cents per cubic foot computed upon the contents of defendant's digester shells, with interest at the statutory rate from the time defendant's digesters were completed. The intended basis of this award was the price charged by plaintiff for license to use the Russell patent; the opinion stating:

"A license fee with interest thereon from the time of the completion of the defendant's pulp-digester would be a fair measure of plaintiff's profits and damages."

Defendant therefore cannot complain that no inquiry into profits was had, for the award was in effect purely one of damages; moreover, the testimony on both sides was confined to damages. The amount of the license fee is no greater than the ordinary license fee charged by plaintiff (it seems to be slightly less), unless the so-called "Jurschina patent" was included in the prices which the court accepted as relating to the Russell patent. We think the record does not bear out this criticism; for although it shows that the Jurschina patent was included in many of the licenses, yet in others it was not, and there was testimony that the licensee did not, usually at least, know that any other patent than the Russell patent was to be in his license, and that the only license in fact paid for was under the Russell patent. The record does not convince us that the district judge was under any misapprehension in the respect stated.

The criticism that interest should not be allowed until after the damages were liquidated is without merit. This is not a case of profits, and the rule relating thereto does not necessarily apply. The measure of plaintiff's damages is the amount it has lost by defendant's failure to buy a license when he should have bought it. In such case it was at least within the court's discretion to award interest from the time the license should have been purchased as part of the damages for defendant's failure to do so. Tilghman v. Proctor, 125 U. S. 136, 143, 8 Sup. Ct. 894, 31 L. Ed. 664; Walker on Patents (4th Ed.) p. 446, § 571.

We are not impressed by the contention that the degree to which Russell's lining was inoperative should be considered upon the question of damages. In view of plaintiff's practice of selling the licenses and the substantial and continued market therefor, we think the court did not err in the assessment of damages, and that the decree of the District Court should be affirmed, with costs.