## FULTON CO. v. BISHOP & BABCOCK CO.

(Circuit Court of Appeals, Sixth Circuit.   November 17, 1922.)

No. 3703.

1. Patents ⬠⇒328—903,465, for bellows wall for vapors, void for lack of invention.

   The Fulton patent, No. 903,465, for a flexible corrugated wall for confining a vapor, the claimed novelty in which is in making the spaces between the corrugations narrow enough so that they would retain water of condensation through capillary force, *held* void for lack of invention, in view of the prior art, which contained corrugations of the same dimensions, which performed the same function, though not expressly designed for that purpose.

2. Patents ⬠⇒66—Prior patents part of prior art for what is disclosed on their face.

   Prior patents are part of the prior art only by what they disclose on their face.

3. Patents ⬠⇒52—Accidental prior production of same thing may not anticipate.

   Prior accidental production of the same thing, where the character and function were not recognized until the invention of the later patent, does not effect anticipation.

4. Patents ⬠⇒66—Incidental similarity in prior drawing not anticipation.

   Anticipation is not disclosed by a drawing which only incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention and was not adopted and used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second inventor.

Appeal from the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Suit in equity by the Fulton Company against the Bishop & Babcock Company.  Decree for defendant, and complainant appeals.  Affirmed.

S. T. Cameron, of Washington, D. C. (Loyd H. Sutton, of Washington, D. C., and Malcolm McAvoy, of Cincinnati, Ohio, on the brief), for appellant.

Horace B. Fay and Jesse B. Fay, both of Cleveland, Ohio, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. [1] This appeal is from the decree of the District Court dismissing bill for infringement of United States patent No. 903,465, November 10, 1908, to Fulton, assignor to plaintiff.  As stated in the specification, the invention relates to flexible, corrugated, tubular walls for confining vapors "whose boiling points are considerably above ordinary atmospheric temperatures."  Such expansible and collapsible walls (frequently called "bellows" walls) had been commonly used for many years, not only in various thermostatic devices, to control and regulate the flow of different materials under changes of temperature, but, as one of the prominent uses,

as a wall for a steam valve—a "packless" valve.[1]  The general form of the "bellows" wall of the patent was common and well known.  Its only claim to novelty lies in the discovery that, if the spaces between the corrugations are made narrow enough to permit the operation of capillary force, or surface tension, they will retain water through the condensation of the vapor, thus preventing the incrustation of the corrugated wall, by the deposit of foreign matter carried by the vapor (which tends to impair the flexibility and integrity of the wall), as well as lessening the injurious effect of high temperatures on such flexibility.  It satisfactorily appears that long prior to and at the time of the issue of this patent there existed standard and well-known formulas for determining the maximum space within which capillary action would operate as related to various kinds of liquids and at various temperatures.  It appeared, for example, that capillary force would operate in the case of water at 23 degrees centigrade (approximately living room temperature), with a maximum spacing between parallel corrugations of about 3 $^9/_{10}$ millimeters, and at the boiling point at about 3½ millimeters.  There was testimony tending to show that capillary action would under some conditions occur with even wider spaces between corrugations.  Claim 3 of the patent, which for the purposes with which are are concerned may be taken as fairly typical of the claims, reads thus:

"3. A flexible corrugated wall for confining a vapor, said wall having corrugations the successive folds of which are in sufficient proximity to constitute liquid-retaining recesses, the liquid being retained therein against gravity by capillary action while the wall expands and collapses, and means limiting the expansion of the wall within the limits of capillary action for the corrugations."

The defenses are lack of patentable invention, lack of sufficient disclosure as well as of utility, and noninfringement.  The District Court found in plaintiff's favor on all of these issues except that of patentable invention, basing its conclusion of lack thereof upon the well-settled proposition that the end or purpose sought to be accomplished by a device is not the subject of a patent, but only the means for obtaining that end, and that, unless such means involve invention, no support is given by the end sought to be secured.  As tersely expressed by the District Judge, "Mere concept, without new mechanical means, is not patentable."  Knapp v. Morss, 150 U. S. 221, 228, 14 Sup. Ct. 81, 37 L. Ed. 1059.

The court concluded that the mechanical means for carrying out the concept were not novel, but were anticipated by the prior art, and especially by certain patents therein.

In our opinion, the correct result was reached, whether or not the prior patents in question are regarded as technically anticipatory or as disclosing a state of the prior art which left no room for invention in the device of the patent in suit.  Manifestly, if plaintiff's patent involves invention, it must be found, not in the use of a corrugated

---

[1] The only valve structure illustrated in the patent drawings is a steam valve surrounded by an ordinary tubular "bellows" wall.  The alleged infringing use was in steam valves.

or "bellows" tubular wall, but in selecting from the variously spaced corrugations theretofore at least open to use by the public (and by devoting to the monopoly of the patent in suit) such widths of spacings as would yield capillarity, such various widths depending upon the kinds of liquids and the temperatures at which they were to be used. The prior inventors, so far as appears, had no occasion to specify the distances between corrugations. Generally speaking, the disclosures were broad enough to cover whatever widths of spacings would best serve the purposes involved in the specific uses to which they were to be put. Under these prior patents, during their life the patentees, and afterwards the public, had a right to make flexible valve walls of any desired width of spacing between corrugations, including such spacing as would be necessary to effect capillarity. Fulton's use of narrowly spaced corrugations thus did not involve the adoption of any peculiarity of form in the sense in which that term is ordinarily used. We greatly doubt whether he can be said to have discovered or disclosed new mechanical means for carrying out the conception on which his asserted invention is based, even if, as is contended, the prior art did not specifically disclose spacings narrow enough to permit capillary action. We think, however, that certain prior patents fairly disclose spacings narrow enough to permit such action.

The drawings of the Graham & Creelman patent, No. 350,881, October 12, 1886, disclose a steam valve with bellows walls containing 13 corrugations. The measurements on the drawing are for pipe of about $1^1/_{16}$ inches external diameter, which in iron pipe would mean an inside diameter of about three-fourths of an inch, which the evidence shows to be a convenient, useful, and commercial size. In a physical embodiment with the same number of corrugations as disclosed in the patent drawing, and made up in accordance therewith, the spacings between the corrugations are less than 2 millimeters, which is only about one-half the maximum spacing in which capillary force concededly is operative. The drawing of the Parsells' bellows valve (patent No. 600,249, March 8, 1898) shows five corrugations, the pipe opening measuring (outside) three-fourths of an inch.[2] In a physical embodiment of the device so shown by the drawings the spacing is well within the capillary limits. The drawings of the McCloskey patent, a prior Fulton patent, and the Armand patent (if accepted as having any evidential effect) have a tendency to disclose spacings within the limits of capillarity, although not as convincingly as in the case of Graham & Creelman and Parsells.[3] Judge Peck was of opinion that the former patents were entitled to a range of sizes applicable to the respective arts with which they deal, and so to be considered as covering the respective commercial sizes in such arts, and that in small commercial sizes the devices in question would, if made in the proportions of their drawings, have the folds of their

[2] A one-half inch pipe (presumably inside diameter) is also a standard commercial size.

[3] The physical embodiments of the Graham & Creelman, Parsells, and McCloskey valve walls retain water between the corrugations in the same way as does plaintiff's wall.

tubing "in sufficient proximity to constitute liquid retaining recesses against gravity by capillary action"; that the capillary function was thus inherent in the devices there shown, if made to the proportions of their drawings, and in sizes small enough to bring the spacings of their folds within the limits of the law of capillarity; and that Fulton thus did not change the structure, form, or size of the previously known "bellows" wall, but only specified that the spacing thereof should be of such width as to hold water by surface tension. With this view we are disposed to agree.

[2-4] It is true that in the patents referred to no reference is made to the capillary feature, nor is there anything to indicate that that principle was known to the respective patentees. None of them show retention of the liquid between the corrugations, and none contain statement that the patent drawings are made to scale, and drawings attached to patents are frequently greatly reduced in size. In the case of Graham & Creelman it appears that the valve shown in the patent was never manufactured (there is no showing of manufacture in the case of the others); and plaintiff's expert says that a three-fourths inch pipe size is inconsistent with the showing of other parts of the drawings. We recognize that prior patents are part of the prior art only by what they disclose on their face (Naylor v. Alsop Process Co. [C. C. A. 8] 168 Fed. 911, 920, 94 C. C. A. 315; Munising Co. v. American Sulphite Pulp Co. [C. C. A. 6] 228 Fed. 700, 703, 143 C. C. A. 222); that prior accidental production of the same thing, where the character and function were not recognized until the invention of the later patent, does not effect anticipation (Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279; Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825, 36 L. Ed. 658; Canda v. Mich. Iron Co. (C. C. A. 6) 124 Fed. 486, 492, 61 C. C. A. 194; Munising Co. v. American Co., supra, 228 Fed. at page 703, 143 C. C. A. 222); and that anticipation is not disclosed by a drawing which only incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention, and was not itself adopted and used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second inventor (Gray Telephone Co. v. Baird Co. [C. C. A. 7] 174 Fed. 417, 421, 98 C. C. A. 353; Munising Co. v. American Co., supra, 228 Fed. at pages 703, 704, 143 C. C. A. 222).

But we think these rules do not destroy the probative force of the patent drawings in question, considered in connection with the physical embodiments thereof. The case presented is not one of arrangement of parts. We think these disclosures are not necessarily to be regarded as merely accidental or "incidental," as related to the number of corrugations and the consequent spacings therebetween, having in mind that the drawings inferably had some relation to commercial sizes in a common and well-known art (plaintiff's expert apparently concedes that "certain features of certain drawings [apparently those cited as prior references] * * * indicate roughly what the dimensions of the parts might be if the structures were made in accord-

ance with the general practice");[4] that there is a wide margin between the width of spacings in the physical reproduction of the device of the Graham & Creelman drawings and the maximum-width spacings which permit capillary action, and the fact that it might well have been thought, or actually found, that a large number of corrugations (resulting in narrower spacings between them) bore some relation to flexibility and "lift" (the latter being one of the talking points of the structure of plaintiff's patent), and so made the wall more efficient, such greater efficiency in length of life or otherwise being in fact due to capillarity, although such cause was not recognized. In these circumstances, the fact that the drawings are not shown to be made to scale, or even that there are inconsistencies in the measurements, should not be enough to destroy their otherwise probative effect. Indeed, we have accepted patent drawings not shown to have been made to scale as having, under the facts of the case, some probative force, and as indicating that the disclosures thereby are not merely accidental. Luten v. Whittier, 251 Fed. 590, 597, 598, 163 C. C. A. 584.

We think the conclusion of noninvention is not in conflict with Minerals Separation, Ltd., v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286, where a process which required less of a certain element was held patentable. But in that case patentability was not found to reside merely in the use of such smaller amount; the patented process was held to belong to neither of the previously existing processes, but to differ "essentially from the prior processes in its character, in its simplicity of operation, and in the resulting concentrate." 242 U. S. 266, 37 Sup. Ct. 84, 61 L. Ed. 286.

Being of opinion that the District Court rightly held the patent void for lack of invention, it is unnecessary to consider the other grounds of invalidity asserted.

The decree of the District Court is affirmed.

---

4 The fact that a change of scale in the drawings would affect other dimensions of the corrugations is not a weighty consideration. These other dimensions are not important. The important thing is the spacing between the corrugations.