**AMERICAN SULPHITE PULP CO. v. BURGESS SULPHITE CO. et al.**

(Circuit Court of Appeals, First Circuit. November 7, 1924.)

No. 1716.

**1. Patents ⚖⇒312(1) — Plaintiff, alleging infringement, has burden of proof.**

Plaintiff, alleging infringement, has burden of proof.

**2. Patents ⚖⇒312(1)—Patentee, unduly delaying suit, is not entitled to have doubts resolved in his favor.**

Patentee, delaying for 15 years before bringing his contentions to trial, is not entitled to have questions of fact involving doubt and difficulty resolved in his favor.

**3. Patents ⚖⇒324(5)—Finding on noninfringement held entitled to unusual weight.**

Where trial of patent infringement case was delayed for 16 years, during which records were lost or destroyed and memories dimmed, finding of noninfringement by trial court, who saw and judged the credibility and accuracy of the witnesses, held entitled to unusual weight.

**4. Patents ⚖⇒328—No. 445,235, for acid-resisting lining of pulp-digesting boiler, held not infringed.**

Russell patent, No. 445,235, for cementitious acid-resisting lining for pulp-digesting boiler, held not infringed.

Appeal from the District Court of the United States for the District of New Hampshire; James Arnold Lowell, Judge.

Action by the American Sulphite Pulp Company against the Burgess Sulphite Company and others. Decree for defendants, and plaintiff appeals. Affirmed.

Frank T. Benner, of Boston, Mass. (Rodney G. Page, of Boston, Mass., on the brief), for appellant.

Marcus B. May, of Boston, Mass. (Alfred H. Hildreth, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This patent infringement suit has an unusual setting. It was filed on April 30, 1907, for the alleged infringement of the Russell patent, No. 445,235, dated January 27, 1891. The case was tried before Judge Lowell in May, 1923—15 years after the expiration of the patent on January 27, 1908. At the end of a 2 weeks trial, the learned District Judge disposed of the case in a brief oral opinion, as follows:

"I am going to give my decision on this now. I have made up my mind, and there is no use in waiting.

"I think that the patent to Russell should be limited to cementitious material which is acid resistant. The defense that the defendant's structure was not acid resistant was not made in any of the cases to which I have been referred. It seems to me it is proved to my satisfaction that the lining— that is, the layers of material next to the shell—were not acid resistant, and therefore that they are not covered by the plaintiff's patent.

"As to the contention that the facing course of brick is set in litharge, it seems to me that that is disclaimed by Russell in two places. In one place, on page 1 of his reissue patent, he says:

"'I am aware of the use heretofore of a digester lining comprising a layer or coat of masonry or brickwork laid in cement, and make no claim thereto.'

"That is one place. In another part of

the specification, on page 2, he refers to the lead paste of Reynolds. So that it seems to me that infringement has not been made out in this case. * * *

"Now, that really disposes of the case; but I suppose it will go to the higher court, and possibly it may be worth while to indicate my opinion on the rest of it.

"If I had held that this defendant were infringing, I should not allow this bill to stand on account of the delay. It seems to me that a person, even after filing his suit, who delays for 16 years to bring it to trial, 15 years of which was after the patent has expired, has not used that due diligence which should induce a court of equity to give him its aid."

The validity of the patent is not in question. As the case was on the merits fully tried before the District Court, as that court found as a fact on all the evidence that there was no infringement, and as we think this conclusion was right, we need not consider the other defense of laches or equitable estoppel.

The Russell patent was construed by this court in American Sulphite Pulp Co. v. Howland Falls Co., 80 F. 395, 25 C. C. A. 500, decided April 16, 1897. For most, perhaps for all, present purposes, the validity and scope of the patent are agreed on both sides to be determined by that opinion.

The pending case is the second suit brought by this plaintiff against this defendant for infringing this same patent. The first suit was brought on November 3, 1899, for using the patented linings in 10 digesters. A motion for a preliminary injunction was heard by Judge Putnam, whose opinion is found in (C. C.) 103 F. 975. His conclusion was that the defendant infringed as to nine of the digesters, and that as to No. 10 the question was too doubtful to justify the issuance of a temporary injunction. As to that digester, Judge Putnam said:

"Without undertaking to go at length into the nature of the lining of the tenth digester, and reserving my views about that until a final hearing, all I need say with reference to it is that it involves too much doubt on the question of infringement to justify me in issuing an injunction against it. The points of doubt are: First. Whether, after all, the real substance of this construction is not that described by the respondents as a purely bona fide composite lining. If it is a purely bona fide composite lining, fairly so termed, it certainly does not come within the claims of the patent in suit, because the very essence and gist of those claims is that Russell was able to get rid of everything except the shell of the digester and the lining of cement. That is the very pith of his invention. Second. I have doubts whether this digester really shows anything more than is shown by the Pierredon patent, lava bricks laid in a heavy course of cement; and what is shown in that patent the public has· the right to use, independently of any question whether Pierredon saw all the advantage coming from having a heavy cement course under his lava bricks. Third. The testimony with reference to the substantial advantages and comparative relations of the various parts of the lining of digester 10 are too conflicting to justify the court in basing an interlocutory injunction upon it. On the whole, it is enough for me to repeat that the question of infringement as to digester 10 is too doubtful to justify this court in using the power of a temporary injunction with reference to it."

Shortly thereafter this first suit was settled by the payment by the defendant to the plaintiff of about $32,000, and the grant of a license by the plaintiff to the defendant, covering the Russell patent, and another patent not now material, for use in the defendant's "ten (10) digesters now erected and in use in its mill at Berlin, N. H., at the present time, or their equivalent in cubical contents."

This suit was by agreement discontinued without costs on November 5, 1900. There was therefore never any complete judicial determination of the question of infringement as to the tenth digester. Perhaps by implication the plaintiff abandoned its contention as to that infringement, thus conceding that the lining in No. 10 was not covered by the Russell patent, but was, as Judge Putnam tentatively thought, "a purely bona fide composite lining, fairly so termed."

About five years later, the defendant, desiring to increase its digester capacity, lengthened certain of its old digesters, numbered 1 to 6, inclusive, and built eight new digesters, numbered 11 to 18, inclusive. In lining the extensions of the old digesters, 1 to 6, and the new digesters, 11 to 18, the defendant claims that it employed substantially the same lining as that used in digester No. 10, against which Judge Putnam had refused to issue an injunction.

The plaintiff, on the other hand, contended and contends that the linings used were covered by the Russell patent, and that, as they were concededly not covered by the li-

cense, they infringe. After some preliminary correspondence and negotiation in 1906, the present suit was brought, as above stated, on April 30, 1907.

In May, 1907, before the filing of an answer and in connection with the motion for a preliminary injunction, plaintiff took and subsequently filed the deposition of Eliphlet E. Decker, whose employment as superintendent of the defendant was terminated in June, 1906, when, as the evidence indicates, Decker, with "about three dozen of his relatives" were "disengaged from the company by Mr. Burgess at that time." Thereafter, and until May, 1923, the litigation slumbered, although somewhat fitfully, for in 1913 the plaintiff took the depositions of William E. Jolbert and George F. Jolbert.

[1-4] Apart from these ancient depositions, the record is made up of nearly 500 pages of parol evidence before the District Court, including the transcript of many letters, besides an addendum of over 150 pages of exhibits, largely dealing with the prior art. This bulky record relates simply to the narrow question whether the linings put in defendant's digesters in 1905 and 1906, and continued in use therein prior to the expiration of the patent on January 27, 1908, were covered by the patent, and to the defendant's present contention of equitable estoppel. Of course, after January 27, 1908, the defendant was free to use the linings covered by the Russell patent. The dates on which the linings were installed and used, therefore, become important. The burden is throughout on the plaintiff. Plainly a patentee, indulging in 15 years of delay before putting its contentions to trial before the court, is not entitled to have questions of fact involving doubt and difficulty, either as to the kind of construction, or as to the date thereof, resolved in its favor. Theodore P. Burgess, one of the original defendants, and other witnesses claimed by the defendant to be material for the defense, have died. Records have been lost or destroyed. The memory of those once conversant with the facts has grown dim. If the issue were otherwise doubtful, as we think it is not, the question is one in which the judgment of the trial judge, who saw and judged the credibility and accuracy of the numerous witnesses who testified before him, is entitled to unusual weight. The prompt and confident decision of the trial judge should not be reversed, unless plainly wrong. Careful examination of the record constrains us to the view that that court was plainly right.

A brief reference to the subject-matter of the patent and to the evidence will be enough to indicate in a general way the basis of our accord with the court below.

A pulp digester is a huge steel boiler, 40 or more feet high, and perhaps 15 feet in diameter. It is used for cooking or reducing wood chips to fiber suitable for making paper. This cooking is done by filling the boiler with chips and bisulphate of lime, and subjecting the mass to steam heat and pressure. In the bisulphate liquor is sulphurous acid, which, if it reaches the steel shell, eats and destroys it. Hence the necessity of lining these steel shells with acid-resisting material. Formerly the shells were lined by sheets of lead,—unsatisfactory, because the lead would expand under heat and would not contract evenly with the contraction of the steel. This noncoordinating contraction caused the lead to creep, buckle, and crack. Russell's invention consisted, roughly speaking, of lining these shells with cementitious material, "put on as one would plaster a wall." 80 F. 398, 25 C. C. A. 503.

The patent has only two claims:

"1. The improved pulp digester herein described, having an outer shell $A$ and a continuous lining or coat $B$ of cement, as described, applied to the interior of the said shell, for the purpose set forth.

"2. The improved pulp digester herein described, having an outer shell $A$, a continuous lining or coat $B$ of cement, substantially as described, applied to the interior of the said shell, and an interior lining of tiles $C$, all substantially as set forth."

In the specification Russell says:

"I am aware of the use heretofore of a digester lining comprising a layer or coat of masonry or brickwork laid in cement, and make no claim thereto. * * * I mean to be understood that the digester linings comprising a layer or coat of masonry or brickwork laid in cement, to which I have just referred, have always been, so far as I know, supplemented by a lining of sheet lead interposed between the brick or tile lining and the digester shell."

The specifications contain other references to the disclaimed prior art. In the Howland Falls Case, 80 F. 395, 25 C. C. A. 500 (the original opinion sustaining and construing this patent), Judge Aldrich said:

"We look at this as an invention of an improved structure, with a devised and described process for creating it and putting it in operation in connection with a new and pressing emergency, and not for any particular ingredient or composition. It is true,

the ingredients must possess certain described characteristics; but after all the ingredients are only a part of the invention involved in the construction of the inner part of the shell, and, in order to answer the prescribed purpose, they must possess certain described plastic, adhesive, cohesive, and acid-resisting characteristics." Page 401. "Russell, having discovered that his required quality was common to cement material generally, still, in the general description employed in his specification, limited his claims to such cement materials as were acid-resisting." Page 409. "In our opinion, the patent is valid; * * * and in our view the patent covers homogeneous structural linings composed of adhesive, acid-resisting materials in the nature of cement, which possess the required qualities described in the specification." Page 410 (25 C. C. A. 515).

To the same general effect is the decision of the Circuit Court of Appeals for the Sixth Circuit in Munising Paper Co. v. American Sulphite Pulp Co., 228 F. 700, 143 C. C. A. 222, where, after expressing the view that "Russell had apparently an exaggerated idea of the effectiveness and permanency of his cementitious mixture as an acid-proof agent," the court said:

"We are satisfied that Russell's cementitious lining, as conceived by him, possesses practical utility and acid-resisting qualities to a substantial degree. * * *

"In our opinion the Russell patent is valid, and must be construed as covering broadly the continuous digester linings composed of cementitious acid-resisting mixtures applied in a plastic state to the outer metal shell, and adhering thereto, so as to furnish protection to the shell from the acid."

The question then before the court is very narrow: Was the District Court wrong in finding as a fact that in the linings used by the defendant, "the layers of material next to the shell were not acid-resisting"? The shells in question were, as the overwhelming weight of the evidence tended to show, lined by two courses of acid-proof commercial bricks, each about 2½ inches thick, so laid as to break joints. The bricks in each course were jointed together by an acid-resistant cement, and in that regard would fall within the express disclaimer in Russell's specification, supra. Back of this brickwork, or between the courses, were thin layers of compositions of silicate of soda, ground slate, litharge, glycerine, plaster of paris, and possibly some other materials, with a small percentage of Portland cement. The gist of the plaintiff's claim is that this backing was acid-resisting, and therefore an infringement.

But, as already indicated, the great weight of the evidence was the other way—that it was nonacid-resisting.

Defendant's evidence tended to show that it relied entirely upon the double acid-proof brick wall to prevent the passage of acid to the steel shell; that in order to construct such wall and properly to protect the outer shell from excessive heat, it was necessary, or at any rate desirable, to line the steel shell with some sort of pasty or plastic material, and that that was all that it had done with the lining of the digesters in question. On that narrow issue of fact the plaintiff utterly failed to sustain the burden of proof. Indeed, as the trial court found, at any rate in form, the defendant proved that these layers were not acid-resisting.

It is difficult to see how the District Court could have reached any other conclusion, without finding that several apparently highly reputable witnesses had committed deliberate perjury.

The decree of the District Court is affirmed, with costs in this court to the appellees.